IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,
a Delaware corporation,

                         Plaintiff,

        v.

COGNIPOWER LLC,

                         Defendant.

C.A. No. _____

**JURY TRIAL REQUESTED**

## COMPLAINT FOR PATENT INFRINGEMENT AND DECLARATORY JUDGMENT

Plaintiff Power Integrations, Inc. hereby alleges as follows:

### THE PARTIES

1.      Power Integrations, Inc. ("Power Integrations") is incorporated under the laws of the state of Delaware, and has a regular and established place of business at 5245 Hellyer Avenue, San Jose, California 95138.

2.      Upon information and belief, defendant CogniPower ("Defendant") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 3217 Phoenixville Pike, Malvern, Pennsylvania 19355.

### JURISDICTION AND VENUE

3.      This is action arises under the United States patent laws, 35 U.S.C. §§ 101, *et seq.*, and includes a request for declaratory relief under 28 U.S.C. §§ 2201 and 2202.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201, and 35 U.S.C. § 1, *et seq.*

4.      Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant has purposely availed itself of the privilege of conducting activities within

this State and judicial District.  For example, Defendant is incorporated in the state of Delaware

and has availed itself of the use of this District's courts in asserting its own patent rights.

5.      Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C.

§ 1400(b) because Defendant is a resident of the state of Delaware through its incorporation

under the laws of this state.

**GENERAL ALLEGATIONS RELATED TO THE
INFRINGEMENT OF POWER INTEGRATIONS' PATENTS**

6.      Plaintiff Power Integrations is a semiconductor company based in San Jose,

California.  For the last 30 years, Power Integrations has been the leading developer and supplier

of the chips that make modern power supplies—used to charge phones and other products—

smaller, lighter, and more energy efficient.

7.      Power Integrations is now, and has been since its issuance, the assignee and sole

owner of all right, title, and interest in United States Patent No. 9,374,011, entitled "Secondary

controller for use in synchronous flyback converter" ("the '011 patent"), which was duly and

legally issued on June 21, 2016.  A true and correct copy of the '011 patent is attached hereto as

Exhibit A.

8.      Power Integrations is now, and has been since its issuance, the assignee and sole

owner of all right, title, and interest in United States Patent No. 9,166,486, entitled "Power

converter using multiple controllers" ("the '486 patent"), which was duly and legally issued on

October 20, 2015.  A true and correct copy of the '486 patent is attached hereto as Exhibit B.

9.      Defendant makes, uses, and offers for a sale a product it refers to as its "Demand

Pulse Regulation" ("DPR") power supply.  Defendant's DPR product is described in detail in

Defendant's presentation entitled "Simplifying Efficient Low Power AC/DC Converters"

("APEC Presentation"), a true and correct copy of which is attached as Exhibit C, and which

2

may be obtained from http://cognipower.com/pdf/CP_APEC2019presentation.pdf (retrieved as of January 6, 2020).  Upon information and belief, this presentation was presented at APEC in Anaheim, California on or around March 19, 2019.

10.    According to the APEC presentation, the accused DPR power supply product(s) were available and presented at APEC 2019, for example Exhibit C at slide 20 is excerpted below:



11.    The APEC Presentation includes additional depictions of physical DPR products that it describes in detail, for example (Exhibit C at slide 10):

Because the regulation intelligence resides on the secondary side, digital interfacing is straightforward

Additional communication across the isolation barrier is not required when adding additional protocols

There is no compensated feedback loop required for regulation so the output can be simply set to an arbitrary, digitally chosen voltage





© CogniPower, LLC 2019                                                                                                                          10

12.    As alleged below, Defendant's DPR product(s) infringe one or more claims of each of Power Integrations '011 and '486 patents.

13.    Power Integrations' products include its InnoSwitch™ families of power conversion integrated circuit devices, which are used in power supplies for electronic devices such as cellular telephones, LCD monitors, and computers.  The InnoSwitch™ Family of ICs combines primary, secondary and feedback circuits in a single surface-mounted off-line flyback switcher IC.  The InnoSwitch IC incorporates a high-voltage primary-side switch, a primary-side controller, a secondary-side controller for synchronous rectification, and an innovative new FluxLink™ technology that eliminates the need for an optocoupler.

14.    Power Integrations' InnoSwitch™ families of power conversion integrated circuit devices practice one or more claims of Power Integrations' '011 and '486 patents.

4

## GENERAL ALLEGATIONS RELATED TO POWER INTEGRATIONS' CLAIMS FOR DECLARATORY JUDGMENT

15.     Defendant has engaged in a broad and aggressive campaign to harass and threaten Power Integrations' customers with assertions of patent infringement liability.  As such, an actual controversy between the parties exists within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

16.     As stated above, and as outlined in detail in Causes of Action One and Two below, Defendant's DPR technology infringes at least Power Integrations' '011 and '486 patents.  As set forth below, Defendant alleges that it owns several patents describing its DPR technology and has erroneously alleged that its DPR technology patents are infringed by Power Integrations' customers in relation to their use of Power Integrations' products.

17.     Defendant's actions have not been limited to mere threats, but also include actual initiation of patent infringement litigation against Power Integrations' customers predicated on their use of Power Integrations' IC products.

18.     On December 18, 2019, Defendant CogniPower LLC filed in the U.S. District Court for the District of Delaware a complaint (the "CogniPower Complaint") for patent infringement alleging patent infringement by Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited (collectively the "Anker Defendants").  A true and correct copy of the CogniPower Complaint is attached as Exhibit D.

19.     The CogniPower Complaint alleges that CogniPower is the owner and assignee of U.S. Reissue Patent No. RE47,031 ("the '031 Patent"), entitled "Power converter with demand pulse isolation."  (Exhibit D at ¶ 29.)  A true and correct copy of the '031 patent is attached as Exhibit E.

20.     The CogniPower Complaint also alleges that CogniPower is the owner and assignee of U.S. Reissue Patent No. RE47,713 ("the '713 Patent"), entitled "Power converter with demand pulse isolation." (Exhibit D at ¶ 31.) A true and correct copy of the '713 patent is attached as Exhibit F.

21.     According to the CogniPower Complaint, Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited "makes, uses, offers to sell, sells, and/or imports charging technology . . . that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip." (Exhibit D at ¶ 34.)

22.     The infringement allegations of the CogniPower Complaint extensively cite to and rely upon alleged functionality in Power Integrations' products; for example, the CogniPower Complaint includes numerous photographs of Power Integrations' IC products and excerpts from Power Integrations' products datasheets. (*E.g.*, Exhibit D at Figs. 3-18 ('031 patent) and 20-21 ('713 patent).)

23.     In addition to initiating litigation on its DPR patents, on October 24, 2019, Defendant through its legal counsel contacted another Power Integrations customer, FSP technology (a customer of Power Integrations' InnoSwitch™ products), by letter. A true and correct copy of that letter is attached as Exhibit G ("FSP Letter").

24.     The FSP Letter identifies the '031 patent, which was asserted against the Anker Defendants and allegedly relates to the DPR technology. The letter alleges that FSP's power supply products utilizing Power Integrations' InnoSwitch™ chips infringe numerous claims of the '031 patent.

25.     Defendant's campaign to harass and threaten Power Integrations' customers continued with another threat letter sent to Power Integrations' customer Huntkey.  A true and correct copy of that letter is attached as Exhibit H ("Huntkey Letter").

26.     The Huntkey letter states that Defendant believes Huntkey (a customer of Power Integrations' InnoSwitch™ IC products) is using the DPR technology without a license and identifies three U.S. patents: the '031 patent and the '713 patent (both of which were asserted against the Anker Defendants) and additionally U.S. Patent No. RE47,714.

27.     A true and correct copy of U.S. Patent No. RE47,714 ("the '714 patent") is attached as Exhibit I.

28.     The '031, '713, and '714 patents are related to one another and allegedly all relate to Defendant's DPR technology.

29.     In light of the specific allegations of the CogniPower Complaint and the additional allegations relating to the same patents and technology in the FSP Letter and Huntkey Letter—all directed specifically to Power Integrations' customers and, on information and belief, all predicated on its customers' use of Power Integrations' InnoSwitch™ integrated circuit products—a substantial controversy exists between parties with adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Accordingly, an actual controversy within this Court's jurisdiction exists under 28 U.S.C. § 2201.

## FIRST CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,374,011

30.     The facts and allegations of paragraphs 1-29 are incorporated by reference for this First Cause of Action as though fully set forth herein.

31.     Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 9,374,011, entitled "Secondary

controller for use in synchronous flyback converter" ("the '011 patent"), which was duly and legally issued on June 21, 2016.  A true and correct copy of the '011 patent is attached hereto as Exhibit A.

32.     Power Integrations practices the inventions described and claimed in its '011 patent, including with its InnoSwitch™ families of IC products.

33.     In violation of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the '011 Patent by making, using, offering for sale, selling, and/or importing its DPR product(s) in the United States, including within Delaware, without the authority of Power Integrations.

34.     Defendant's DPR product, which is described and photographed in Exhibit C, infringes at least claim 1 of the '011 patent.

35.     Claim 1 of the '011 patent first recites "1. A secondary controller for use in a synchronous flyback converter, the secondary controller comprising . . ."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation.  According to the APEC Presentation: "The key to building a practical DPR power converter is the secondary side circuitry."  (Exhibit C at slide 11.)  Further, by way of example only, the APEC Presentation at slide 4 depicts an exemplary synchronous flyback converter that includes a secondary controller (which, by way of example only, may include the Demand Pulse Generator, Error Amplifier, Reference, and Synchronous Rectification Control blocks), and, as recited in claim 1 (the diagram below is referred to herein as the "DPR Block Diagram").



36.   Next, claim 1 of the '011 patent recites: "a comparator coupled to generate a compare signal in response to a comparison of a threshold to an input signal representative of a secondary winding voltage of the synchronous flyback converter."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation.  By way of example only, an example of such a comparator is shown in the DPR Block Diagram as the element labelled "Error Amplifier," which is coupled to generate a compare signal based on the comparison of a threshold (labelled "Reference") and an input signal representative of the secondary winding voltage (shown as coupled to the secondary winding of the "Power Transformer" and input to the "Error Amplifier").  The APEC Presentation includes exemplary

waveforms depicting actual comparisons using the recited comparator performed during operation of an infringing DPR product.  (*See* Exhibit C at slide 8.)

37.     Claim 1 of the '011 patent next recites: "a drive circuit coupled to generate a drive signal to control a first switch to be coupled to a primary side of the synchronous flyback converter, wherein the drive signal is coupled to be generated by the drive circuit in response to a feedback signal representative of an output of the synchronous flyback converter."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation. According to the APEC Presentation, "[t]he primary side side (sic) switch is turned on by demand pulses sent through the pulse transformer" and "[t]he decision to turn on the switch is made at the optimum point through a simple comparison."  (Exhibit C at 5.)  Further, by way of example only, the first switch may be the "MAIN SWITCH" of the DPR Block Diagram. According to the APEC Presentation, the drive signal is generated by a drive circuit in response to a feedback signal representative of the output of the synchronous flyback converter.  (*E.g.*, Exhibit C at slides 4-8.)

38.     Claim 1 of the '011 patent lastly recites: "logic circuitry coupled to the drive circuit and coupled to the comparator, wherein the logic circuitry is coupled to generate a control signal to control a second switch in response to the drive signal and in response to the compare signal, and wherein the second switch is to be coupled to a secondary side of the synchronous flyback converter."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation.  By way of example only, the recited logic circuitry may be found inside of the "Synchronous Rectification Control" block of the DPR Block Diagram, which generates a control signal to control a second switch, which by way of example only, may be the switch labelled "SYNC RECT".  The recited drive signal is generated in response to the compare signal,

for example as shown in the DPR Block Diagram, and as described in the APEC Presentation: "Advance notice from secondary side control for when the primary side switch is about to turn on enables simpler, more efficient synchronous rectification."  (Exhibit C at slide 16.)

39.     Accordingly, Defendant directly infringes at least claim 1 of the '011 patent, both literally and under the doctrine of equivalents.  Power Integrations expressly reserves the right to assert additional claims in this litigation against the same or additional products of Defendant, in accordance with the rules of this Court.

40.     Power Integrations has been damaged as a result of Defendant's infringing conduct.  Defendant is therefore liable to Power Integrations for damages in an amount that adequately compensates for Defendant's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## SECOND CAUSE OF ACTION

## INFRINGEMENT OF U.S. PATENT NO. 9,166,486

41.     The facts and allegations of paragraphs 1-40 are incorporated by reference for this Second Cause of Action as though fully set forth herein.

42.     Power Integrations is now, and has been since its issuance, the assignee and sole owner of all right, title, and interest in United States Patent No. 9,166,486, entitled "Power converter using multiple controllers" ("the '486 patent"), which was duly and legally issued on October 20, 2015.  A true and correct copy of the '486 patent is attached hereto as Exhibit B.

43.     Power Integrations practices the inventions described and claimed in its '486 patent, including with its InnoSwitch™ families of products.

44.     Defendant's DPR product described and presented in the APEC Presentation, and in the incorporated paragraphs above, infringes at least claim 1 of the '486 patent.

45.     Claim 1 of the '486 patent first recites a "1. A power converter controller."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation. Defendant's DPR product includes a power converter controller, as shown in the DPR Block diagram and as embodied in Defendant's physical DPR products shown in the APEC Presentation.

46.     Next, claim 1 of the '486 patent recites: "a primary controller to be coupled to a power switch of a power converter, wherein the primary controller is coupled to receive one or more request signals and transition the power switch from an OFF state to an ON state in response to each of the one or more received request signals, and wherein the primary controller is coupled to detect a turn-off condition when the power switch is in the ON state and transition the power switch from the ON state to the OFF state in response to detection of the turn-off condition."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation.  By way of the example only, the recited "one or more request signals" of '486 patent claim 1 may be the DPR product's "Demand pulses," which are referenced in the DPR Presentation, and which by way of example only, are described in slide 5 of the APEC Presentation shown below:

# How Does it Work?

The primary side side switch is turned on by demand pulses sent through the pulse transformer

The primary side switch is turned off by the switch drive control on the basis of the primary current or time

The decision to turn on the switch is made at the optimum point through a simple comparison

The only information that needs to cross the barrier is an instant in time





© CogniPower, LLC 2019                                    **CogniPOWER** *power smarter*                                    5

47.     Defendant's DPR product includes circuitry wherein the primary controller is coupled to receive one or more request signals and transition the power switch from an OFF state to an ON state in response to each of the one or more received request signals.  For example, according to the APEC Presentation, "[t]he primary side side (sic) switch is turned on by demand pulses sent through the pulse transformer."  (Exhibit C at slide 5.)

48.     Further, Defendant's DPR product includes circuitry wherein the primary controller is coupled to detect a turn-off condition when the power switch is in the ON state and transition the power switch from the ON state to the OFF state in response to detection of the turn-off condition."  By way of example only, the recited "turn-off condition" in Defendant's DPR product may be based on the primary side switch current or time: "The primary side switch

is turned off by the switch drive control on the basis of the primary current or time." (Exhibit C at slide 5.)

49.     Next, claim 1 of the '486 patent recites: "a secondary controller galvanically isolated from the primary controller, wherein the secondary controller is coupled to transmit the one or more request signals to the primary controller, and wherein the secondary controller is coupled to control an amount of time between the transmission of each of the request signals." The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation. By way of the example only, as shown in the DPR Block Diagram the secondary controller is galvanically isolated from the primary controller.

50.     Further, and also by way of example only, the APEC Presentation confirms that the secondary controller is coupled to transmit the one or more request signals to the primary controller: "The primary side side (sic) switch is turned on by demand pulses sent through the pulse transformer." (Exhibit C at slide 5.) The secondary controller of the DPR product is coupled to control an amount of time between the transmission of each of the request signals: "Whenever the instantaneous output falls below the regulation point, a demand pulse is generated." (Exhibit C at slide 7.) By way of example only, that the amount of time between the transmission of the request signals is determined by the secondary side is confirmed in the DPR Block Diagram (showing the "Demand Pulse Generator" block on the secondary side) and elsewhere in the APEC Presentation. For example, slide 13 describes the recited operation:

## Functions Provided by the DP Generator

The DPG makes a very fast current pulse from a slowly changing error signal, while using practically no power

That very fast edge propagates easily through a minimal, inexpensive, non-critical pulse transformer

The DPG sets the maximum frequency of operation

The DPG output frequency is in proportion to the magnitude of the error signal, allowing smooth operation, even into and out of continuous conduction

And, the DPG itself does not require regulated power

CogniPOWER

© CogniPower, LLC 2019                                                                                                    13

51.     Finally, claim 1 of the '486 patent recites "wherein the turn-off condition is a threshold current limit and the primary controller is coupled to adjust the threshold current limit in response to an amount of time the power switch is in the ON state."  The presence of this limitation in Defendant's DPR product is confirmed in the APEC Presentation.  As explained in the APEC Presentation, by way of example only, the recited "turn-off condition" may be based on the primary side switch current or time: "The primary side switch is turned off by the switch drive control on the basis of the primary current or time."  (Exhibit C at slide 5.)

52.     Accordingly, Defendant directly infringes at least claim 1 of the '486 patent both literally and under the doctrine of equivalents.  Power Integrations expressly reserves the right to

assert additional claims in this litigation against the same or additional products of Defendant, in accordance with the rules of this Court.

53.     Power Integrations has been damaged as a result of Defendant's infringing conduct.  Defendant is therefore liable to Power Integrations for damages in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### THIRD CAUSE OF ACTION

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. RE47,031 E

54.     The facts and allegations of paragraphs 1-53 are incorporated by reference for this Third Cause of Action as though fully set forth herein.

55.     The '031 patent is asserted against the Anker Defendants in the CogniPower Complaint, which relies on citations to Power Integrations' products datasheets.  The '031 patent also was identified in the FSP Letter and Huntkey Letter threatening Power Integrations' InnoSwitch™ customers.

56.     On information and belief, all of the allegations of the CogniPower Complaint, FSP Letter, and Huntkey Letter allegedly relate to Defendant's DPR technology, which Defendant alleges is claimed in the '031 patent.

57.     For example, according to the CogniPower Complaint, Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited "makes, uses, offers to sell, sells, and/or imports charging technology . . . that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip."  (Exhibit D at ¶ 34.)

58.     Likewise, on information and belief, the FSP Letter and Huntkey Letter both relate to allegations of infringement of the '031 patent by Power Integrations' customers directly relating to their use of Power Integrations' InnoSwitch™ products.

59.     Power Integrations' InnoSwitch™ and LytSwitch-6™ products do not infringe any claim of the '031 patent; likewise no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the '031 patent.  By way of example only, claim 1 of the '031 patent recites, in part, "a capacitor and a second rectifier both galvanically connected to the secondary winding, wherein: the second rectifier is different from the first rectifier and is poled to charge the capacitor during forward pulses of the apparatus; and the demand pulse generator is powered by energy stored in the capacitor to generate the demand pulses."  At least this element of claim 1 is not met by Power Integrations' InnoSwitch™ and LytSwitch-6™ products or any power supply utilizing Power Integrations' InnoSwitch™ and LytSwitch-6™ products, and therefore any such products and/or power supplies do not infringe.

60.     Power Integrations is entitled to a declaration pursuant to 28 U.S.C. § 2201 stating that Power Integrations' InnoSwitch™ and LytSwitch-6™ products (and/or their use in a power supply) do not infringe, directly or indirectly, any claim of the '031 patent either literally or under the doctrine of equivalents.

61.     Defendant's false accusations of infringement of the '031 patent by customers are predicated on use of Power Integrations' products.  Consequently, an actual and justiciable controversy exists between Power Integrations and Defendant CogniPower concerning noninfringement of the '031 patent.

## FOURTH CAUSE OF ACTION

### DECLARATORY JUDGMENT OF NONINFRINGEMENT OF
### U.S. PATENT NO. RE47,713 E

62.    The facts and allegations of paragraphs 1-61 are incorporated by reference for this Fourth Cause of Action as though fully set forth herein.

63.    The '713 patent is asserted against the Anker Defendants in the CogniPower Complaint, which relies on citations to Power Integrations' products datasheets.  The '713 patent also was identified in the FSP Letter and Huntkey Letter threatening Power Integrations' InnoSwitch™ customers.

64.    On information and belief, all of the allegations of the CogniPower Complaint, FSP Letter, and Huntkey Letter allegedly relate to Defendant's DPR technology, which Defendant alleges is claimed in the '713 patent.

65.    For example, according to the CogniPower Complaint, Fantasia Trading LLC d/b/a AnkerDirect and Anker Innovations Limited "makes, uses, offers to sell, sells, and/or imports charging technology . . . that incorporate circuitry providing demand pulse regulation such as a Power Integrations InnoSwitch or LytSwitch-6 chip."  (Exhibit D at ¶ 34.)

66.    Likewise, on information and belief, the FSP Letter and Huntkey Letter both relate to allegations of infringement of the '713 patent by Power Integrations' customers directly relating to their use of Power Integrations' InnoSwitch™ products.

67.    Power Integrations' InnoSwitch™ and LytSwitch-6™ products do not infringe any claim of the '713 patent; likewise no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the '713 patent.  By way of example only, claim 18 of the '713 patent recites, in part, "the secondary side further comprises: a first capacitor; and a first rectifier poled to charge the first capacitor during forward power converter pulses of the flyback converter, wherein the demand pulses are generated using energy

stored in the first capacitor."  At least this element of claim 18 is not met by Power Integrations'

InnoSwitch™ and LytSwitch-6™ products or any power supply utilizing Power Integrations'

InnoSwitch™ and LytSwitch-6™ products, and therefore any such products and/or power

supplies do not infringe.

68.    Power Integrations is entitled to a declaration pursuant to 28 U.S.C. § 2201 stating

that Power Integrations' InnoSwitch™ and LytSwitch-6™ products (and/or their use in a power

supply) do not infringe, directly or indirectly, any claim of the '713 patent either literally or

under the doctrine of equivalents.

69.    Defendant's false accusations of infringement of the '713 patent by customers are

predicated on use of Power Integrations' products.  Consequently, an actual and justiciable

controversy exists between Power Integrations and Defendant CogniPower concerning

noninfringement of the '713 patent.

### FIFTH CAUSE OF ACTION

**DECLARATORY JUDGMENT OF NONINFRINGEMENT OF
U.S. PATENT NO. RE47,714 E**

70.    The facts and allegations of paragraphs 1-69 are incorporated by reference for this

Fifth Cause of Action as though fully set forth herein.

71.    The '714 patent was identified in the Huntkey Letter threatening Power

Integrations' InnoSwitch™ customer.

72.    Like the '031 and '713 patents, Defendant alleges that the '714 patent also relates

to its DPR technology.

73.    On information and belief, the Huntkey Letter relates to allegations of

infringement of the '714 patent by Power Integrations' customers directly relating to their use of

Power Integrations' InnoSwitch™ products.

74.     Power Integrations' InnoSwitch™ and LytSwitch-6™ products do not infringe any claim of the '714 patent; likewise no power supply product using Power Integrations' InnoSwitch™ or LytSwitch-6™ products infringes any claim of the '714 patent.  By way of example only, claim 18 of the '714 patent recites, in part, "the converter secondary side further comprises: a first capacitor; and a first rectifier poled to charge the first capacitor during forward power converter pulses of the flyback converter, wherein the demand pulses are generated using energy stored in the first capacitor."  At least this element of claim 18 is not met by Power Integrations' InnoSwitch™ and LytSwitch-6™ products or any power supply utilizing Power Integrations' InnoSwitch™ and LytSwitch-6™ products, and therefore any such products and/or power supplies do not infringe.

75.     Power Integrations is entitled to a declaration pursuant to 28 U.S.C. § 2201 stating that Power Integrations' InnoSwitch™ and LytSwitch-6™ products (and/or their use in a power supply) do not, directly or indirectly infringed any claim of the '714 patent either literally or under the doctrine of equivalents.

76.     Defendant's false accusations of infringement of the '714 patent by customers are predicated on use of Power Integrations' products.  Consequently, an actual and justiciable controversy exists between Power Integrations and Defendant CogniPower concerning noninfringement of the '714 patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

(a)     judgment that Defendant infringes the '011 patent and that the patent is valid and enforceable;

(b)     judgment that Defendant infringes the '486 patent and that the patent is valid and enforceable;

(c)      judgment that Power Integrations has not infringed, and does not infringe, directly or indirectly, any claim of the '013, '713, and/or '714 patent, either literally or under the doctrine of equivalents;

(d)      judgment against Defendant for money damages owed to Power Integrations for Defendant's infringement of the '011 and '486 patents in an amount to be determined at trial;

(e)      an accounting for infringing sales not presented at trial and an award by the Court of additional damages for any such infringing sales;

(f)      costs and reasonable attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285; and

(g)      such other and further relief as the Court finds just and proper.

## JURY DEMAND

Plaintiff Power Integrations requests trial by jury.

Dated:  January 6, 2020              FISH & RICHARDSON P.C.

                                     By:  _/s/ Douglas E. McCann_
                                         Douglas E. McCann (#3852)
                                         222 Delaware Avenue, 17th Floor
                                         P.O. Box 1114
                                         Wilmington, DE  19801
                                         Telephone: (302) 652-5070
                                         Email:  dmccann@fr.com

                                         Frank E. Scherkenbach
                                         One Marina Park Drive
                                         Boston, MA  02210-1878
                                         Telephone: (617) 542-5070
                                         Email: scherkenbach@fr.com

Howard G. Pollack
Michael R. Headley
Neil A. Warren
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Email: pollack@fr.com; headley@fr.com;
warren@fr.com

**ATTORNEYS FOR PLAINTIFF,**
**POWER INTEGRATIONS, INC.**