## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

POWER INTEGRATIONS, INC.,
a Delaware corporation

        Plaintiff,

    v.

COGNIPOWER LLC,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No.: 20-cv-00015-CFC

JURY TRIAL REQUESTED

### OPENING BRIEF IN SUPPORT OF DEFENDANT
### COGNIPOWER LLC'S PARTIAL MOTION TO DISMISS PURSUANT
### TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

**COLE SCHOTZ P.C.**
Michael F. Bonkowski (No. 2219)
Bradley P. Lehman (No. 5921)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 652-3131 (Telephone)
(302) 652-3117 (Facsimile)
mbonkowski@coleschotz.com
blehman@coleschotz.com

*Attorneys for Defendant,*
*CogniPower LLC*

Dated: February 27, 2020

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  LAW ............................................................................................................... 2

    A.    Rule 12(b)(6) - Failure to state a claim upon which relief can be granted. ................................................................................................ 2

    B.    Rule 12(b)(1) - Lack of subject-matter jurisdiction. ........................... 4

    C.    The Declaratory Judgment Act ............................................................ 5

    D.    Patent infringement. ............................................................................. 8

        1.    Direct infringement. ................................................................... 8

        2.    Indirect infringement.................................................................. 9

III. ARGUMENT ................................................................................................ 10

    A.    Power Integrations' Declaratory Judgment Action fails to establish the existence of a concrete case or controversy between Power Integrations and CogniPower. ...................................................... 10

        1.    The Huntkey Letter never mentions Power Integrations and cannot form the basis of a concrete case or controversy regarding any of the `031, `713, and `714 Patents................... 11

        2.    The FSP Letter never mentions Power Integrations and cannot form the basis of a concrete case or controversy regarding the `031 Patent. ...................................................... 13

        3.    Power Integrations' pleadings are insufficient to establish the existence of a concrete case or controversy between Power Integrations and CogniPower regarding the `031 and `713 Patents based on the Anker lawsuit. ............................... 14

        4.    CogniPower's limited enforcement efforts do not establish the existence of a concrete case or controversy between CogniPower and Power Integrations........................................ 18

        5.    If this Court does find that it has subject matter jurisdiction over Power Integrations' Declaratory Judgment Action, it should exercise its discretion and decline to exercise that jurisdiction.............................................................................. 19

B.   Power Integrations' Declaratory Judgment Action fails to adequately identify the products for which it seeks declaration of non-infringement and therefore should be dismissed. ........................ 21

IV. CONCLUSION ................................................................................ 22

CERTIFICATE OF COMPLIANCE WITH STANDING ORDERS ................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Am. Gen. Life Ins. Co. v. Mann*,
    No. C.A. 09-434 GMS, 2011 WL 446048 (D. Del. Feb. 3, 2011) .................6

*Arris Grp., Inc. v. British Telecommunications PLC*,
    639 F.3d 1368 (Fed. Cir. 2011) .................................................. 7, 9, 15-16

*Baxter Healthcare Corp. v. Spectramed, Inc.*,
    49 F.3d 1575 (Fed. Cir. 1995) .................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................3

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
    495 F.3d 1340 (Fed. Cir. 2007) ........................................................ 5-6

*BroadSign Int'l, LLC v. T-Rex Prop. AB*,
    No. 16 CV 04586-LTS, 2018 WL 357317 (S.D.N.Y. Jan. 10, 2018)... *passim*

*Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*,
    136 F.R.D. 485 (E.D. Wis. 1991) ............................................................1

*Circuit City Stores, Inc. v. Citgo Petroleum Corp.*,
    No. 92-CV-7394, 1994 WL 483463 (E.D. Pa. Sept. 7, 1994).........................1

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)............................................................................9

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F.3d 1303 (Fed. Cir. 2011) ................................................ 7, 11-12, 14

*EchoStar Satellite LLC v. Finisar Corp.*,
    515 F. Supp. 2d 447 (D. Del. 2007)..................................................... 4-5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)...............................................................................8

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
    90 F.3d 479 (Fed. Cir. 1996) ............................................................. 5-6

*Global-Tech Appliances, Inc. v. SEB, S.A.*,
    131 S. Ct. 2060 (2011)................................................................9

*McNeill v. Snow*,
    No. CV 16-757-CFC, 2018 WL 6584121 (D. Del. Dec. 14, 2018) ............ 1-2

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)........................................................ 5, 18

*Microsoft Corp. v. WebXchange Inc.*,
    No. CA 09-484-JJF, 2009 WL 3534845 (D. Del. Oct. 30, 2009) .................6

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005) ........................................................8

*PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*,
    No.  3:11-CV-273-J-37TEM,  2012  WL  243346
    (M.D. Fla. Jan. 25, 2012)........................................................ 4, 21

*Telebrands Corp. v. 1ByOne Prod. Inc.*,
    No. CV 17-997-JFB-SRF, 2017 WL 5593785 (D. Del. Nov. 21, 2017).........1

*Terra Nova Ins. Co. v. 900 Bar, Inc.*,
    887 F.2d 1213 (3d Cir. 1989) ........................................................6

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
    482 F.3d 1330 (Fed.Cir.2007) ........................................................5

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)........................................................6

*Wistron Corp. v. Phillip M. Adams & Assocs., LLC*,
    No. C-10-4458 EMC, 2011 WL 1654466 (N.D. Cal. Apr. 28, 2011)... 3-4, 22

**Statutes**                                     **Page(s)**

28 U.S.C. § 2201(a)........................................................5

35 U.S.C. § 271(a)........................................................8

35 U.S.C. § 271(b)........................................................9

35 U.S.C. § 271(c)........................................................9

iv

**Rules** **Page(s)**

Fed. R. Civ. P. 8(a)(2) ..................................................................................2

Fed. R. Civ. P. 12(b)(1) ...................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................... *passim*

Defendant CogniPower LLC ("CogniPower") files this Brief in Support of its Partial Motion to Dismiss Plaintiff Power Integrations, Inc.'s ("Power Integrations") Complaint for Patent Infringement and Declaratory Judgment (D.I. 1, the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]

## I.   INTRODUCTION

The first two counts of Power Integrations' Complaint allege that CogniPower infringes two of Power Integrations' patents. *See* Power Integrations' Complaint, ¶¶ 30-53. These counts are not addressed in this Motion. *See* footnote 1.

Counts three through five of Power Integrations' Complaint seek declaratory judgment of non-infringement regarding U.S. Reissue Patent No. RE47,031 (the "'031 Patent"), U.S. Reissue Patent No. RE47,713 (the "'713 Patent"), and U.S. Reissue Patent No. RE47,714 (the "'714 Patent"), respectively. *See* Power

---

[1] "A Rule 12 motion is a response filed in lieu of an answer." *Telebrands Corp. v. 1ByOne Prod. Inc.*, No. CV 17-997-JFB-SRF, 2017 WL 5593785, at *2 (D. Del. Nov. 21, 2017). Further, pursuant to the plain language of Federal Rule of Civil Procedure 12(a)(4), this motion enlarges CogniPower's time to answer all claims in Power Integrations' complaint, including claims not subject to this motion. *See, e.g., Circuit City Stores, Inc. v. Citgo Petroleum Corp.*, No. 92-CV-7394, 1994 WL 483463, at *4 (E.D. Pa. Sept. 7, 1994) (citing *Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485 (E.D. Wis. 1991)). Therefore, CogniPower will file its answer to Power Integrations' remaining claims after the issues raised in this Motion are resolved by the Court.

59788/0001-19908878

Integrations' Complaint, ¶¶ 54-76. Specifically, Power Integrations seeks declaratory judgment that "Power Integrations' InnoSwitch™ and LytSwitch-6™ products (and/or their use in a power supply) do not infringe, directly or indirectly, any claim of the" `031 Patent, `713 Patent, or `714 Patent "either literally or under the doctrine of equivalents." Power Integrations' Complaint, ¶¶ 60, 68, and 75. *See also* Power Integrations' Complaint, ¶¶ 59, 67, and 74 (asserting that "no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the" `031 Patent, `713 Patent, or `714 Patent). Counts three through five of Power Integrations' Complaint are collectively referred to herein as "Power Integrations' Declaratory Judgment Action."

Because Power Integrations' Declaratory Judgment Action fails to establish the existence of a concrete case or controversy between the parties, and because Power Integrations' Declaratory Judgment Action fails to state a claim upon which relief can be granted, this Court should dismiss Power Integrations' Declaratory Judgment Action per Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.   LAW

### A.   Rule 12(b)(6) - Failure to state a claim upon which relief can be granted.

***Generally.*** Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to meet the pleading standards set forth in Federal Rule of Civil Procedure 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6),

59788/0001-19908878

a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *McNeill v. Snow*, No. CV 16-757-CFC, 2018 WL 6584121, at *1 (D. Del. Dec. 14, 2018). In reviewing such a motion, "[a] court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference." *Id.*

As explained in *Twombly*, "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Without providing sufficient factual allegations in its complaint, a plaintiff satisfies neither the requirement of providing "fair notice" of the nature of the claim nor of stating the "grounds" upon which the claim rests. *Id.* In sum, *Twombly* states that Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented," and it does not authorize the "bare averment that he wants relief and is entitled to it." *Id.* at 555, n.3.

***Identification of Products.*** In order to satisfy *Twombly*, a declaratory judgment action for non-infringement must, among other things, identify the products at issue. *Wistron Corp. v. Phillip M. Adams & Assocs., LLC*, No. C-10-4458 EMC, 2011 WL 1654466, at *12 (N.D. Cal. Apr. 28, 2011). Indeed, "without identifying the accused products, there simply is no way to adjudicate an

infringement claim." *Id.* A declaratory judgment action that "seeks a generalized holding of non-infringement" unbound by "conduct, an accused product, or a relevant time period" fails to state a claim upon which relief can be granted. *See PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*, No. 3:11-CV-273-J-37TEM, 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012).

### B.   Rule 12(b)(1) - Lack of subject-matter jurisdiction.

*Generally.* Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal for a court's lack of jurisdiction over a complaint's subject matter or a plaintiff's lack of standing. *EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 450 (D. Del. 2007). A Rule 12(b)(1) motion "may present either a facial or factual challenge to the court's subject matter jurisdiction." *Id.* Facial challenges are reviewed using the same standards used to review a Rule 12(b)(6) motion, discussed in Section II(A) above. *Id.* In contrast, a factual challenge "is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint." *Id.* When considering a factual challenge to subject matter jurisdiction, a court "may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction." *Id.* The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Id.*

## C.    The Declaratory Judgment Act.

***Generally.*** The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction." 28 U.S.C. § 2201(a); *EchoStar*, 515 F. Supp. 2d at 450. "Plaintiffs bear the burden of proving the existence of an actual controversy by a preponderance of the evidence with regard to their declaratory judgment complaint." *Id.* at 450-51. An "actual controversy" is one that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted). A controversy must also be ripe for review—that is, a court must assess whether the defendant's alleged conduct have injured, are injuring, or are about to injure the plaintiff. *See EchoStar*, 515 F. Supp. 2d at 451 (citing *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1337 (Fed.Cir.2007)). Of note, "[t]he burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007). *See also GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (explaining that "later events may not create jurisdiction where none existed at the time of filing" and that "[t]he presence or absence of jurisdiction must

5

59788/0001-19908878

be determined on the facts existing at the time the complaint under consideration was filed") (internal citations and quotations omitted).

Finally, even where a court finds that a concrete case or controversy exists, the Declaratory Judgment Act gives a court judicial discretion to decline jurisdiction over the matter and dismiss the lawsuit. *Microsoft Corp. v. WebXchange Inc.*, No. CA 09-484-JJF, 2009 WL 3534845, at *3 (D. Del. Oct. 30, 2009) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995)). In deciding whether to exercise discretion, courts in this District consider factors including, but not limited to, "(1) whether declaratory relief would clarify and settle the legal relations in issue; (2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation, (4) the availability and relative convenience of other remedies; and (5) whether the declaratory judgment act is being used for 'procedural fencing,' 'forum shopping,' or as a means to provide another forum in a 'race' for res judicata." *Id.* (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224-1225 (3d Cir. 1989)). Indeed, courts in this District are "charged with ensuring that procedural fencing, forum shopping or gamesmanship is not rewarded." *Am. Gen. Life Ins. Co. v. Mann*, No. C.A. 09-434 GMS, 2011 WL 446048, at *5 (D. Del. Feb. 3, 2011) (internal quotations and citations omitted).

*"Customer" litigation.* Neither letters sent to nor lawsuits filed against a declaratory plaintiff's customers by the declaratory defendant are sufficient to establish a concrete case or controversy between the two. *See, e.g., Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1316 (Fed. Cir. 2011); *BroadSign Int'l, LLC v. T-Rex Prop. AB*, No. 16 CV 04586-LTS, 2018 WL 357317, at *3 (S.D.N.Y. Jan. 10, 2018). "Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction." *Creative Compounds*, 651 F.3d at 1316.

That said, courts have recognized that a lawsuit brought against a declaratory plaintiff's customer may support jurisdiction "if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers." *Arris Grp., Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011). *See also BroadSign*, 2018 WL 357317, at *3.

### D.    Patent infringement.

Because Power Integrations' Declaratory Judgment Action relates to direct and indirect infringement both literally and under the doctrine of equivalents, CogniPower briefly addresses the elements of each of these causes of action.

### 1.    Direct infringement.

Generally speaking, there are two types of direct infringement under 35 U.S.C. § 271(a)—literal direct infringement and direct infringement under the "doctrine of equivalents." *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1372 (Fed. Cir. 2005).

*Literal infringement.* To prove literal direct infringement of a patent, a plaintiff typically must prove by a preponderance of the evidence that the accused product contains elements or performs steps that meet every limitation of one or more of the claims of the patent. *See, e.g., Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).

*Doctrine of Equivalents.* To prove direct infringement of a patent under the doctrine of equivalents, a plaintiff typically must prove by a preponderance of evidence that, for each claim limitation of one or more claims of the patent, either the claim limitation is found in the accused product or the accused product contains an equivalent element or performs an equivalent step. *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732 (2002).

8

### 2.   Indirect infringement.

Generally speaking, there are two types of indirect infringement—induced infringement under 35 U.S.C. § 271(b) and contributory infringement under 35 U.S.C. § 271(c).

***Induced infringement.*** To prove indirect infringement of a patent by inducement, a plaintiff typically must prove by a preponderance of evidence that: (a) an act of direct infringement was committed by someone (the "direct infringer"); (b) the defendant (the "indirect infringer") took some action intending to cause the direct infringer to infringe; and (c) the indirect infringer was aware of the patent and knew that the acts, if taken, would constitute infringement of the patent. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015); *Global-Tech Appliances, Inc. v. SEB, S.A.*, 131 S. Ct. 2060, 2068 (2011).

***Contributory infringement.*** To prove indirect infringement of a patent by contribution, a plaintiff typically must prove by a preponderance of evidence that: (a) the indirect infringer's component "was used to commit acts of direct infringement"; (b) the component constituted a material part of the invention; (c) the indirect infringer knew that its component "was especially made or especially adapted for use in an infringement of the patent"; and (4) that the component "is not a staple article or commodity of commerce suitable for substantial noninfringing use." *See Arris Group*, 639 F.3d at 1376.

## III.   ARGUMENT

Power Integrations fails to meet its burden of establishing the existence of a concrete case or controversy between Power Integrations and CogniPower; therefore, this Court should dismiss Power Integrations' Declaratory Judgment Action pursuant to Rule 12(b)(1).

Further, Power Integrations fails to identify the products on which it seeks declaratory judgment of non-infringement with the requisite specificity; therefore, this Court should dismiss Power Integrations' Declaratory Judgment Action pursuant to Rule 12(b)(6).

### A.   Power Integrations' Declaratory Judgment Action fails to establish the existence of a concrete case or controversy between Power Integrations and CogniPower.

Power Integrations' Complaint relies on three documents for its claim that a concrete case or controversy exists between the parties: (1) the Huntkey Letter; (2) the FSP Letter; and (3) CogniPower's Complaint against Anker. For the reasons explained below, these documents and Power Integrations' pleadings fail to establish a concrete case or controversy between the parties; therefore, Power Integration's Declaratory Judgment Action should be dismissed pursuant to Rule 12(b)(1).

10

1.    **The Huntkey Letter never mentions Power Integrations and cannot form the basis of a concrete case or controversy regarding any of the `031, `713, and `714 Patents.**

The Huntkey Letter never mentions Power Integrations, InnoSwitch products, or LytSwitch-6 products. *See* Power Integrations' Complaint, Ex. H ("Huntkey Letter"). CogniPower has not sued Huntkey, nor has Power Integrations plead that it has any obligation to indemnify Huntkey. *See BroadSign*, 2018 WL 357317, at \*3.

The Huntkey Letter forms the sole basis for Power Integrations' claim that a concrete case or controversy exists between Power Integrations and CogniPower with respect to the `714 Patent. Power Integrations' Complaint, ¶¶ 70-76 and Ex. H. The `714 Patent is not referenced in the FSP Letter, nor is there a claim for infringement of the `714 Patent in the Anker lawsuit. *See* Power Integration's Complaint, Ex. D (CogniPower's Complaint against Anker). The Huntkey Letter is insufficient to establish the existence of a concrete case or controversy between the parties with respect to the `714 Patent. *See Creative Compounds*, 651 F.3d at 1316.

Instead of the letter itself, Power Integrations' Complaint relies on misleading characterizations of the Huntkey Letter in an effort to fabricate a case or controversy. For example, Power Integrations' alleges that "[t]he '714 patent was identified in the Huntkey Letter threatening Power Integrations' InnoSwitch™ customer." Power Integrations' Complaint, ¶ 71. Power Integrations goes on to claim that "Defendant's

11

false accusations of infringement of the '714 patent by customers are predicated on use of Power Integrations' products." Power Integrations' Complaint, ¶ 76. But Power Integrations' Complaint references only a single letter mentioning the '714 Patent, and that Huntkey Letter does not call Huntkey a "Power Integrations' InnoSwitch™ customer," reference "Power Integrations' products," or even mention Power Integrations.

While a court may have to accept Power Integrations' pleadings as true in other circumstances, it is not required to do so here. This Court has the benefit of being able to compare Power Integrations' pleadings with the Huntkey Letter that Power Integrations attached to its Complaint *C.f. Creative Compounds*, 651 F.3d at 1315. The simple fact is that the Huntkey Letter does not support Power Integrations' pleadings.

In short, the Huntkey Letter does not assert that Power Integrations is a direct or indirect infringer of any of the '031, '713, and '714 Patents either literally or under the doctrine of equivalents. And Power Integrations has not plead that the Huntkey Letter triggers an indemnity obligation towards Huntkey. Therefore, the Huntkey Letter cannot form the basis for a concrete case or controversy between CogniPower and Power Integrations and should be disregarded.

Further, because the Huntkey Letter forms the sole basis for Power Integrations' claim that a concrete case or controversy exists between Power

12

Integrations and CogniPower with respect to the `714 Patent, Power Integrations'
claim for declaratory judgment of non-infringement of the `714 Patent should be
dismissed pursuant to Rule 12(b)(1).

> **2.    The FSP Letter never mentions Power Integrations and
> cannot form the basis of a concrete case or controversy
> regarding the `031 Patent.**

Like the Huntkey Letter, the FSP Letter never mentions Power Integrations,
InnoSwitch products, or LytSwitch-6 products. *See* Power Integrations' Complaint,
Ex. G ("FSP Letter"). CogniPower has not sued FSP, nor has Power Integrations
plead that it has any obligation to indemnify FSP. *See BroadSign*, 2018 WL 357317,
at *3. And the FSP Letter only references the `031 Patent, it does not mention either
of the `713 or `714 Patents.

Like the Huntkey Letter, Power Integrations' Complaint relies on misleading
characterizations of the FSP Letter rather than the actual contents of the letter itself.
For example, Power Integrations' Complaint says "[t]he '031 patent also was
identified in the FSP Letter and Huntkey Letter threatening Power Integrations'
InnoSwitch™ customers." Power Integrations' Complaint, ¶ 55. Power Integration's
Complaint even blurs the line between misleading characterization and outright
falsehood in spots. For example, Power Integrations says "[t]he letter alleges that
FSP's power supply products utilizing Power Integrations' InnoSwitch™ chips
infringe numerous claims of the '031 patent." ¶ 24. *See also* ¶ 76. But the FSP Letter

does not make any statements about "FSP's power supply products utilizing Power Integrations' InnoSwitch™ chips." It does not even call FSP a "Power Integrations' InnoSwitch™ customer," reference "Power Integrations' products," or mention Power Integrations.

Again, while a court may have to accept Power Integrations' pleadings as true in other circumstances, it is not required to do so here. *C.f. Creative Compounds*, 651 F.3d at 1315. A comparison of Power Integrations' pleadings to the FSP Letter, attached to Power Integrations' Complaint, shows that the FSP Letter does not support Power Integrations' pleadings.

In short, the FSP Letter does not assert that Power Integrations is a direct or indirect infringer of the `031 Patent either literally or under the doctrine of equivalents. And Power Integrations has not plead that the FSP Letter triggers an indemnity obligation towards FSP. Therefore, the FSP Letter cannot form the basis for a concrete case or controversy between CogniPower and Power Integrations and should be disregarded.

### 3. Power Integrations' pleadings are insufficient to establish the existence of a concrete case or controversy between Power Integrations and CogniPower regarding the `031 and `713 Patents based on the Anker lawsuit.

The remainder of Power Integrations' claim that there exists a concrete case or controversy between CogniPower and Power Integrations relies on CogniPower's lawsuit against Anker. *See, e.g.*, Power Integrations' Complaint, ¶¶ 55, 57, 63, and

14

65. CogniPower's lawsuit against Anker involves only the `031 and `713 Patents; it does not involve the `714 Patent. *See* Power Integration's Complaint, Ex. D (CogniPower's Complaint against Anker).

Power Integrations' pleadings fail to establish a concrete case or controversy between Power Integrations and CogniPower based on the Anker lawsuit. First, Power Integrations has not plead that it has any obligation to indemnify Anker as a result of that lawsuit. *See BroadSign*, 2018 WL 357317, at *3. Second, Power Integrations' pleadings in support of its declaratory judgment for non-infringement with respect to indirect infringement are bare bones. *See id.*

For comparison, in *BroadSign*, T-Rex sued at least five of BroadSign's customers for patent infringement over the course of several years. 2018 WL 357317, at *1. Some of these lawsuits included allegations of patent infringement that referenced specific BroadSign products like "BroadSign's 'Showscreens,' the 'Mallscape network,' 'digital billboards,' and 'digital airport advertising network, including the Prestige network.'" *Id.* at *1, n.2. BroadSign had received "numerous requests for indemnification" from customers. *Id.* at *1.

BroadSign filed an action seeking declaratory judgment of non-infringement of the relevant patents. *Id.* T-Rex filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Id.* In assessing BroadSign's claim for subject matter jurisdiction, the court assessed whether BroadSign had an obligation to indemnify

15

its customers, and whether there was a controversy between T-Rex and BroadSign for contributory infringement based on the alleged acts of direct infringement by BroadSign's customers. *Id.* at *3 (relying on *Arris Group*, 639 F.3d at 1375).

With respect to indemnification, the court noted that, while BroadSign plead that it had received requests for indemnification, it did not claim an obligation to indemnify its customers. *Id.* at *4. The court found that requests without obligations do not establish subject matter jurisdiction. *Id.*

The court then assessed contributory infringement. In doing so, the court reasoned as follows:

> Taking the facts alleged in the light most favorable to Plaintiff and without additional facts, BroadSign has sufficiently pled that T-Rex could establish the first two elements of a contributory infringement cause of action—that BroadSign's "product was used to commit acts of direct infringement" by BroadSign's customers and that the use of the product by BroadSign's customers "constituted a material part of the invention." Plaintiff, however, has failed to allege facts indicating that T-Rex could establish the two remaining elements of the cause of action, as nothing in the Amended Complaint or the proffered averments suggests that BroadSign "knew its product was especially made or especially adapted for use in an infringement of the [Patents-in-Suit]" or that "the [software] is not a staple article or commodity of commerce suitable for substantial noninfringing use." Thus, T-Rex's suits against Plaintiff's customers are insufficient to establish a case or controversy as to a potential contributory infringement claim against Plaintiff BroadSign.

*Id.* at *4 (internal citations omitted).

***Contributory infringement.*** As explained in *BroadSign*, contributory infringement requires elements beyond Anker's direct infringement. Like the

16

declaratory plaintiff's complaint in *BroadSign*, Power Integrations' Complaint fails to allege facts indicating that CogniPower could establish all of the elements of contributory infringement of either of the `031 or `713 Patents. Power Integrations' claims for declaratory judgment of non-infringement in this regard should be dismissed.

*Induced infringement.* As with contributory infringement, discussed above, induced infringement requires elements beyond Anker's direct infringement. For example, induced infringement requires "at least some intent" and "knowledge that the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760, 766 (2011). Because Power Integrations' Complaint fails to allege facts indicating that CogniPower could establish all of the elements of contributory infringement of either of the `031 or `713 Patents, Power Integrations' claims for declaratory judgment of non-infringement in this regard should be dismissed.

In short, Power Integrations has failed to show how the Anker Lawsuit establishes a concrete case or controversy between Power Integrations and CogniPower with respect to direct or indirect infringement either of the `031 or `713 Patents either literally or under the doctrine of equivalents. Power Integrations' claim for declaratory judgment of non-infringement of the `031 and `713 Patent should be dismissed pursuant to Rule 12(b)(1).

### 4.   CogniPower's limited enforcement efforts do not establish the existence of a concrete case or controversy between CogniPower and Power Integrations.

Power Integrations' Complaint is full of claims that CogniPower is engaged in a "broad and aggressive campaign" to "harass" and "threaten" Power Integrations' customers. Power Integrations' Complaint, ¶¶ 15, 25, 55, 63, 71. In support of these claims, Power Integrations offers only the Huntkey and FSP Letters, which extend licensing opportunities and neither of which even mentions Power Integrations, and CogniPower's lawsuit against Anker.

Of note, Power Integrations has not plead that the Huntkey Letter, FSP Letter, or the Anker lawsuit assert that Power Integrations directly infringes the `031, `713, or `714 Patents either literally or under the doctrine of equivalents (or otherwise, as discussed above). Further, Power Integrations has not plead that CogniPower has asserted these patents against Power Integrations directly by letter, lawsuit, or otherwise. *See Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (noting that "the fact that [declaratory defendant] had filed infringement suits against other parties for other products does not, in the absence of any act directed toward [declaratory plaintiff], meet the minimum standard discussed in *MedImmune*").

Power Integrations cannot carry its burden of proving the existence of a concrete case or controversy with unsupported, exaggerated claims. Because Power

Integrations has failed to establish the existence of a concrete case or controversy, its Declaratory Judgment Action should be dismissed in its entirety.

> **5. If this Court does find that it has subject matter jurisdiction over Power Integrations' Declaratory Judgment Action, it should exercise its discretion and decline to exercise that jurisdiction.**

If this Court finds that Power Integrations has satisfied its burden of demonstrating a concrete case or controversy between Power Integrations and CogniPower, CogniPower requests that this Court exercise its discretion and decline to entertain Power Integrations' Declaratory Judgment Action.

Power Integrations' and Anker's litigation conduct—both represented by the same law firm—suggests that Power Integrations filed its Declaratory Judgment Action in an effort to inject delay into CogniPower's lawsuit against Anker and litigate invalidity multiple times. This type of conduct should not be rewarded. *See American General*, 2011 WL 446048, at *3.

According to Anker's Brief, Power Integrations "filed a declaratory-judgment action to protect its customers—both Anker and those that may be targets in the future." C.A. No. 19-cv-02293-CFC, D.I. 9 ("Anker's Brief"), p. 2 Setting aside for the moment that a desire to "protect customers," including unidentified companies "that may be targets in the future," is an insufficient basis for filing a declaratory judgment action, the underlying premise that Power Integrations' Declaratory Judgment Action will create efficiency is likely a façade. If Power Integrations

intended to promote judicial economy, it likely would have asserted claims for declaratory judgment of invalidity of the `031, `713, and `714 Patents in its Complaint as well. Indeed, Anker raised invalidity as an affirmative defense. C.A. No. 19-cv-02293-CFC, D.I. 1 ("Anker's Answer"), p. 9. Rather, Power Integrations appears to be setting up an attempt to circumvent the statutory bar on filing *inter partes* reviews ("IPRs") imposed by 35 U.S.C. § 315(a) by awaiting counterclaims of infringement to which it would counterclaim for invalidity and then argue that it could raise invalidity challenges before both this Court and the Patent Trial and Appeal Board ("PTAB"). *See* Anker's Motion, p. 10 (discussing "CogniPower's expected counterclaim against PI"). This potentially creates a scenario where Power Integrations' attempts to litigate invalidity at the PTAB, attempts to litigate invalidity before this Court if it unsuccessful, and Anker attempts to litigate invalidity a third time if unhappy with the prior results.

Based on the actions and statements made by Power Integrations' and Anker's attorneys, Power Integrations' Declaratory Judgment Action appears to be an attempt at the kind of "procedural fencing" and gamesmanship that does not merit reward. Therefore, CogniPower respectfully requests that the Court decline to entertain Power Integrations' Declaratory Judgment Action in the event it does find that Power Integrations has met its burden of establishing the existence of a concrete case or controversy between the parties.

59788/0001-19908878

**B.     Power Integrations' Declaratory Judgment Action fails to adequately identify the products for which it seeks declaration of non-infringement and therefore should be dismissed.**

Power Integrations is seeking declaratory judgment that: (1) "no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the '031 patent"; (2) "no power supply product using Power Integrations' InnoSwitch™ and LytSwitch-6™ products infringes any claim of the '713 patent"; and (3) "no power supply product using Power Integrations' InnoSwitch™ or LytSwitch-6™ products infringes any claim of the '714 patent." Power Integrations' Complaint, ¶¶ 59, 67, and 74.

Power Integrations' complaint states that the "InnoSwitch™ families of power conversion integrated circuit devices" can be "used in power supplies for electronic devices such as cellular telephones, LCD monitors, and computers." Power Integrations' Complaint, ¶ 4. A request for declaratory judgment that no "power supply product" including a device from these "families of power conversion integrated circuit devices" used in "power supplies for electronic devices" is so broad and so vague that it is tantamount to no identification at all. *PPS Data, LLC v. Allscripts Healthcare Sols., Inc.*, No. 3:11-CV-273-J-37TEM, 2012 WL 243346, at *4 (M.D. Fla. Jan. 25, 2012) (granting Rule 12(b)(6) motion to dismiss counterclaim for declaratory judgment of non-infringement where the products were inadequately defined and noting that the defendant "seeks a generalized holding of non-

21

infringement—relief which is not cabined by conduct, an accused product, or a relevant time period. This Court will not give Defendant a judicial imprimatur that all of its products, services, and conduct are 'ok'").

Without a specific identification of the products that Power Integrations claims are non-infringing, "there simply is no way to adjudicate an infringement claim." *Wistron*, 2011 WL 1654466, at *12 (granting Rule 12(b)(6) motion to dismiss declaratory judgment claims of non-infringement). For this reason, Power Integrations' Declaratory Judgment Action should be dismissed entirely pursuant to Rule 12(b)(6).

## IV.   CONCLUSION

Because the Huntkey Letter is insufficient to establish a concrete case or controversy between Power Integrations and CogniPower, Power Integrations' claim for declaratory judgment of non-infringement with respect to the `714 Patent should be dismissed pursuant to Rule 12(b)(1). Additionally, because the FSP Letter and Anker lawsuit are insufficient to establish a concrete case or controversy between Power Integrations and CogniPower, Power Integrations' claim for declaratory judgment of non-infringement with respect to the `031 and `713 Patents should be dismissed pursuant to Rule 12(b)(1). However, if this Court does find that Power Integrations has satisfied its burden, CogniPower respectfully requests that the Court decline to entertain Power Integrations' Declaratory Judgment action in

22

order to prevent the "procedural fencing" and gamesmanship discussed in Section III(A)(5) above.

In any event, because Power Integrations fails to specifically identify the products on which it seeks declaratory judgment of non-infringement with respect to the `031, `713, and `714 Patents, Power Integrations' Declaratory Judgment Action should be dismissed in its entirety pursuant to Rule 12(b)(6).

**COLE SCHOTZ P.C.**

Michael F. Bonkowski (No. 2219)
Bradley P. Lehman (No. 5921)
500 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 652-3131 (Telephone)
(302) 652-3117 (Facsimile)
mbonkowski@coleschotz.com
blehman@coleschotz.com

*Attorneys for Defendant,*
*CogniPower LLC*

OF COUNSEL:
Gary R. Sorden
Texas Bar No. 24066124
gsorden@coleschotz.com
Timothy J.H. Craddock
Texas Bar No. 24082868
tcraddock@coleschotz.com

COLE SCHOTZ, P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Dated:  February 27, 2020

24

## CERTIFICATE OF COMPLIANCE WITH STANDING ORDERS

The undersigned counsel hereby certifies that it has complied with this Court's November 6, 2019 Standing Order regarding Briefing in All Cases in that this document contains 4,954 words as calculated by Microsoft Word and that it is typed in Times New Roman 14-point font.

Dated: February 27, 2020

Michael F. Bonkowski (No. 2219)

59788/0001-19908878