# EXHIBIT A

Trials@uspto.gov
571-272-7822

Paper 21
Entered: May 12, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

FANTASIA TRADING LLC D/B/A ANKERDIRECT,
Petitioner,

v.

COGNIPOWER, LLC,
Patent Owner.

_____

IPR2021-00067
Patent RE47,031 E

_____

Before KEVIN F. TURNER, JEFFREY S. SMITH, and JOHN R. KENNY,
*Administrative Patent Judges*.

SMITH, *Administrative Patent Judge*.

DECISION
Granting Institution of *Inter Partes* Review
*35 U.S.C. § 314*

IPR2021-00067
Patent RE47,031 E

# I.      INTRODUCTION

Fantasia Trading LLC D/B/A AnkerDirect  ("Petitioner") filed a
Petition to institute an *inter partes* review of claims 1, 2, 8, 10, 18, 25, 27,
30–33, 37, 38, 40, 43–46, 49, 52–55, 58–61 (the "challenged claims") of U.S.
Patent No. RE47,031 E (Ex. 1001, the "'031 patent," "challenged patent")
pursuant to 35 U.S.C. § 311 *et seq*.  Paper 2 ("Pet.").  CogniPower LLC
("Patent Owner") filed a Preliminary Response.  Paper 11 ("Prelim. Resp.").
With our authorization (Paper 14), Petitioner filed a Reply to the Preliminary
Response (Paper 15, "Prelim. Reply"), and Patent Owner filed a Preliminary
Sur-reply to Patent Owner's Preliminary Response (Paper 18, "Prelim. Sur-
reply").

We have authority to institute an *inter partes* review under 35 U.S.C.
§ 314 if "there is a reasonable likelihood that the petitioner would prevail
with respect to at least 1 of the claims challenged in the petition."  35 U.S.C.
§ 314(a) (2018).  After considering the briefing and the evidence of record,
we institute an *inter partes* review in this proceeding.

## A. Related Matters

The parties identify the following related district court litigation:
*CogniPower LLC v. Fantasia Trading, LLC D/B/A AnkerDirect*, C.A. No.
19-cv-02293 (D. Del.).  Pet. 60; Paper 5, 2.

Patent Owner identifies the following related IPRs: IPR2021-00068, -
00069, and -00070, which challenge the '031 patent, and IPR2021-00071, -
00072, and -00073, which challenge U.S. Patent No. RE47,713 E, which is a
continuation of the '031 patent.  Paper 5, 1–4.

IPR2021-00067
Patent RE47,031 E

*B. Challenged Patent*

The '031 patent relates to "switched-mode power converters" and discloses "a switched-mode power converter with regulation demand pulses sent across a galvanic isolation barrier." Ex. 1001, code (57), 1:27–29.

Figure 1 of the '031 patent is shown below:



# Fig. 1

Figure 1 is a schematic diagram of a power converter (10a). Ex. 1001, 2:29–30. "Terminals 11a and 12a constitute a power input port that places source 5a in circuit with primary winding 101a of transformer 100a and with communicating switch 200a." *Id.* at 2:32–35. "[S]witch 200a is a MOSFET having a source S, a gate G, and a drain D." *Id.* at 2:37–38. "Transformer 100a also comprises a regeneration winding 102a which is referenced to source S of MOSFET 200a, is connected through a capacitor 202a to gate G of MOSFET 200a, and is poled to provide regenerative feedback to gate G of

IPR2021-00067
Patent RE47,031 E

MOSFET 200a." *Id.* at 2:38–42. "MOSFET 200a, transformer 100a, capacitor 202a, and resistor 201a form an input-side blocking oscillator which acts as a driver circuit toggling ON and OFF MOSFET 200a." *Id.* at 2:45–48. "Transformer 100a also comprises a secondary winding 104a which may be connected to a floating common terminal 14a." *Id.* at 2:49–51. "[D]iode 300a and a capacitor 301a form a rectifier circuit to rectify and filter voltage pulses from winding 104a to supply power through a power output port comprising terminals 13a and 14a to an external load represented by resistor 7a connected in circuit therewith, one end of which may be referred to a floating common 8a." *Id.* at 2:51–56. "The power input port 11a/12a and the power output port 13a/14a may be galvanically isolated from each other." *Id.* at 2:56–58.

"Flyback pulses of transformer 100a occur when MOSFET 200a ceases conduction, i.e., turns OFF." Ex. 1001, 2:59–60. "Winding 104a is poled to cause diode 300a to rectify only these flyback pulses." *Id.* at 2:60–62. "Forward pulses, of opposite polarity to the flyback pulses, occur while MOSFET 200a is ON." *Id.* at 2:63–64. "Another diode 500a, poled to rectify forward pulses, and another capacitor 501a form an auxiliary rectifier circuit to rectify and filter forward pulses from winding 104a, and to store energy for triggering the input-side blocking oscillator formed by MOSFET 200a." *Id.* at 2:64–3:1.

"This magnetically-coupled blocking oscillator may be triggered through any transformer winding magnetically coupled thereto." Ex. 1001, 3:10–12. "Therefore, just as MOSFET 200a may be turned ON through winding 102a, it may as easily be triggered through winding 104a." *Id.* at 3:12–14. "To trigger thusly, diode 500a is briefly short-circuited by a switch

IPR2021-00067
Patent RE47,031 E

502a which is driven by a demand pulse generator 503a to source a pulse of energy from capacitor 501a into transformer 100a." *Id.* at 3:14–17.

"[T]ransformer 100a is used during the conduction of MOSFET 200a as a forward converter supplying the auxiliary rectifier circuit, and during the flyback of transformer 100a as a flyback converter supplying power to the power output port." Ex. 1001, 3:49–53. "Once the flyback pulse has reset the inductance of transformer 100a, i.e., has depleted energy from its magnetic field, transformer 100a is free, until the next ON time of MOSFET 200a, to be used as a magnetically coupled isolator to convey trigger information between its windings." *Id.* at 3:56–61. "[T]he information thus conveyed is a pulse from pulse generator 503a which, responsive to the output of comparator 401a, indicates the need for another energy-bearing cycle, and moreover retriggers the blocking oscillator to provide that energy bearing cycle." *Id.* at 3:61–66.

"This converter may be fitted with a reference voltage 400a and a comparison circuit 401a." Ex. 1001, 4:3–4. "When the voltage at terminal 13a falls below the comparison voltage, comparison circuit 401a causes pulse generator circuit 503a to pulse, turning ON switch 502a, triggering an energy-bearing ON cycle of the blocking oscillator, and charging capacitor 301a." *Id.* at 4:4–8. "As load 7a drains capacitor 301a, terminal 13a voltage repeatedly falls to the voltage of reference 400a, causing comparison circuit 401a to initiate energy-bearing ON cycles." *Id.* at 4:8–11.

*C. Challenged Claims*

Petitioner challenges claims 1, 2, 8, 10, 18, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, 58–61, of which claims 1, 10, and 18 are independent. Claim 1 reads:

IPR2021-00067
Patent RE47,031 E

1.  Apparatus configured to provide switched-mode power conversion, the apparatus comprising:

an input port configured to receive input power;

a switch configured to commutate the input power;

galvanic isolation circuitry configured to provide galvanic isolation between the input port and an output port, wherein the galvanic isolation circuitry comprises a transformer comprising (i) a primary winding arranged in circuit with the input port and the switch and (ii) a secondary winding arranged in circuit with a first rectifier and the output port, wherein the transformer is configured to transfer power from the input port to supply voltage or current to a load connected to the output port;

a demand pulse generator galvanically connected to the secondary winding and configured to generate demand pulses applied via the galvanic isolation circuitry to the switch to adjust a frequency of the commutation of the input power to supply a desired amount of voltage or current to the load; and

a capacitor and a second rectifier both galvanically connected to the second winding, wherein:

the second rectifier is different from the first rectifier and is poled to charge the capacitor during forward pulses of the apparatus; and

the demand pulse generator is powered by energy stored in the capacitor to generate the demand pulses.

Ex. 1001, 12:7–34.

*D. Asserted Challenges to Patentability and Prior Art*

Petitioner challenges the following claims based on the grounds in the table below.

IPR2021-00067
Patent RE47,031 E

| Ground | Claims Challenged | 35 U.S.C. § | References/Basis |
|--------|-------------------|-------------|------------------|
| 1 | 1, 2, 8, 10, 18, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, 58–61 | 103 | Zhu[1] and Mao[2] |
| 2 | 1, 2, 8, 10, 18, 25, 30–33, 37, 38, 43–46, 49, 52–54, 58–61 | 103 | Szepesi[3] and Mao |

Pet. 2.

Petitioner submits a declaration (Ex. 1003) from its proffered expert, Mr. Bohannon.  Patent Owner submits a declaration (Ex. 2001) from its proffered expert, Mr. Sandler.

## II.   LEVEL OF SKILL AND CLAIM CONSTRUCTION

### A. Level of Skill in the Art

To determine the level of an ordinarily skilled artisan, various factors may be considered, including the "type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field."  *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (quotation omitted).

Mr. Bohannon testifies that an ordinarily skilled artisan would have "B.S. degree, or its equivalent, in electrical engineering or physics and approximately two years of practical experience working with switching regulators and analog/mixed signal circuit design, or an equivalent

---

[1] US 2011/0096573 A1, published Apr. 28, 2011 (Ex. 1005).
[2] US 6,466,461 B2, issued Oct. 15, 2002 (Ex. 1006).
[3] US 5,498,995, issued Mar. 12, 1996 (Ex. 1007).

IPR2021-00067
Patent RE47,031 E

combination of academic study and work experience." Ex. 1003 ¶ 41.

Mr. Sandler uses the same definition for his analysis. Ex. 2001 ¶ 19.

Based on the current record, we are persuaded that Messrs.

Bohannon's and Sandler's description of the level of ordinary skill in the art

is appropriate for the subject matter of the '031 patent, and, for this Decision,

we adopt that description.

### B. Claim Construction

Neither party requests that we construe any claim term. Pet. 2; Prelim.

Resp. 19. Further, we determine that we do not need to construe any claim

term expressly for this Decision. *Nidec Motor Corp. v. Zhongshan Broad

Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017).

### III.   ANALYSIS OF ASSERTED GROUNDS

### A. Ground 1: Asserted Obviousness over Zhu and Mao

Petitioner asserts that claims 1, 2, 8, 10, 18, 25, 27, 30–33, 37, 38, 40,

43–46, 49, 52–55, 58–61 would have been obvious over Zhu and Mao. Pet.

2.

IPR2021-00067
Patent RE47,031 E

### 1. Zhu

Zhu relates to "switching mode power supplies (SMPS)." Ex. 1005

¶ 3. Figure 3 of Zhu is shown below:



**FIG. 3**

Figure 3 above is "a simplified system schematic diagram of an SMPS having a rectifying diode located in the upper side of the secondary winding." *Id.* at ¶ 24. In particular, Figure 3 above "shows SMPS300 configured in a flyback converter topology." *Id.* at ¶ 41.

"System 300 includes a primary winding 305 coupled in series to a power transistor 308, a secondary winding 306, and an auxiliary winding 307." Ex. 1005 ¶ 41. "A primary side control circuit 301 receives a voltage signal through a FB input terminal and a current sense signal through a CS input terminal." *Id.* "Control circuit 301 turns on and off power transistor 308 based on the voltage and/or current signals." *Id.* "When power transistor 308 is turned on, a primary current Ip builds in primary winding 305, which stores energy." *Id.* "The energy stored in primary winding 305 is transferred to secondary winding 306 during the turn-off time interval of

IPR2021-00067
Patent RE47,031 E

power transistor 308." *Id.* "A rectifier element 313 and a smoothing capacitor 314 in secondary winding 306 converts a secondary voltage Vs into a DC system voltage Vout to supply to a load 315." *Id.* "System output voltage Vout is monitored by a secondary side controller circuit 316." *Id.* "The change information of output voltage Vout is sent by control circuit 316 in the secondary side, and received by control circuit 301 in the primary side." *Id.*

"[S]econdary side control circuit 316 includes a control circuit 320 and a switch." Ex. 1005 ¶ 42. "Control circuit 320 turns on the switch when system output voltage Vout is below a predetermined value." *Id.*

### 2. Mao

Mao is directed to "circuits and techniques that improve the performance of circuitry that generates a dc bias voltage for use in the primary and/or secondary stages of a power converter, such as single-ended forward-converters, single-ended flyback converters, [and an] asymmetric half-bridge converter." Ex. 1006, 1:11–15.

IPR2021-00067
Patent RE47,031 E

Figure 4A of Mao is shown below:



FIG. 4A

Figure 4A above illustrates "a bias circuit that . . . allows generating a bias voltage that is less sensitive to swings in the input voltage range as compared to [a prior art] biasing circuit." Ex. 1006, 2:63–67. Bias circuit 50 includes bias windings Tb1 and Tb2, which are voltage sources, and are coupled with an isolating transformer T. *Id.* at 3:12–29. Cb1 is a voltage-holding capacitor and Cf is a filter capacitor that is coupled in parallel with the load to which bias circuit 50 delivers energy. *Id.*

IPR2021-00067
Patent RE47,031 E

Figure 9 of Mao is shown below:



FIG. 9

Figure 9 above shows power converter 10 with circuit $50^V$, diodes 56 and 58, capacitors Cb1 and Cf, and bias winding Tb1.  Mao has no express, textual description of this figure.  Mao discloses that "when the required turns for windings Tb1 and Tb2 are the same, the first and second voltage sources can be integrated into the same physical winding Tb as shown in FIG. 4C."[4]  Ex. 1006, 4:32–36.  "That is, the first and second voltage sources could share a common winding or portions thereof."  *Id.* at 4:36–37.

### 3. Proposed Combination of Zhu and Mao

Petitioner argues that "[i]t would have been within the skill of [an ordinarily skilled artisan] to modify Zhu to add the improved bias circuit of

---

[4] Petitioner asserts that the reference to Fig. 4C is a typographical error and should refer to Fig. 9 instead.  Pet. 19 (citing Ex. 1003 ¶ 87).

IPR2021-00067
Patent RE47,031 E

Mao, either by providing an additional bias winding or by including the
[bias] Mao circuit in the output stage itself." Pet. 13 (citing Ex. 1003 ¶¶ 57–
58). Mr. Bohannon provides the following annotated figure displaying this
combined structure ("Zhu-Mao Combination Figure," "Zhu-Mao Combined
SMPS," respectively):



Ex. 1003 ¶ 57. The above Zhu-Mao Combined SPMS combines the SMPS
of Figure 3 of Zhu with bias circuit $50^V$ of Figure 9 of Mao. Ex. 1005, Fig. 3;
Ex. 1006, Fig. 9. Mr. Bohannon testifies that in the above figure "the bias
circuitry of FIG. 9 of Mao has been attached in place of the bias circuitry in
Zhu, which merely powered the secondary controller using the output

13

IPR2021-00067
Patent RE47,031 E

voltage." Ex. 1003 ¶ 58. The Zhu-Mao Combination Figure also includes annotations by Mr. Bohannon, identifying his mapping of various elements in the challenged claims to the structures shown in the figure. *Id.* ¶ 57. We address the efficacy of the proposed combination below.

### 4. *Preamble and Limitations of Claim 1*

#### a. *1.0.⁵ preamble*

Claim 1's preamble recites "[a]pparatus configured to provide switched-mode power conversion, the apparatus comprising." Petitioner argues that "Zhu discloses a switched-mode power conversion apparatus." Pet. 13 (citing Ex. 1005 Abstract, Figs. 1, 3–4, ¶¶ 3, 7–17, 35, 41, 44). Petitioner further argues that "Mao discloses a switched mode power conversion apparatus and, more specifically, a bias circuit for providing power to a secondary control circuit." *Id.* Petitioner cites Mao's disclosure that Mao is "generally related to control and operation of power converter devices, and, more particularly, to circuits and techniques that improve the performance of circuitry that generates a dc bias voltage for use in the primary and/or secondary stages of a power converter, such as . . . single ended flyback converters." Ex. 1006, 1:9–17 (cited by Pet. 13). Patent Owner presents no counterargument concerning the preamble of claim 18.

We determine that Petitioner has made a sufficient showing for the preamble of claim 1. For this reason, we do not need to determine whether the preamble of claim 18 is limiting.

---

⁵ For ease of reference, we use Petitioner's numerical identifiers for the preamble and claim limitations.

IPR2021-00067
Patent RE47,031 E

### b. 1.1. an input port configured to receive power

Petitioner argues that Zhu discloses a primary side with an input port.
Pet. 13–14.  Petitioner provides an annotated version of Figure 3 of Zhu
("Petitioner's Annotated Zhu Figure 3") shown below:



In Petitioner's Annotated Zhu Figure 3 above, Petitioner indicates that
windings 305 and 307 and everything to the left of those windings constitute
the primary side of the switching mode power supply.  In this annotated
figure, Petitioner further indicates that Vac, which is shown to the left of
windings 305 and 307, is the input port.  Patent Owner provides no
counterargument.  We determine that Petitioner has made a sufficient
showing for this limitation.

### c. 1.2. a switch configured to commutate the input power

Petitioner argues that "Zhu discloses the claimed switch."  Pet. 14.  In
Petitioner's Annotated Zhu Figure 3 (shown in Section III.A.4.b. above),

15

IPR2021-00067
Patent RE47,031 E

Petitioner identifies transistor 308 as the switch configured to commutate power.  *Id.*  Petitioner further quotes Zhu's disclosure that "FIG. 3 shows SMPS 300 configured in a flyback converter topology  [including] a primary winding 305 coupled in series to a power transistor 308."  *Id.* (quoting Ex. 1005 ¶ 41).  Patent Owner provides no counterargument.  We determine that Petitioner has made a sufficient showing for this limitation.

> ### d. 1.3. galvanic isolation circuitry configured to provide galvanic isolation between the input port and an output port, wherein the galvanic isolation circuitry comprises

Petitioner argues that "Zhu discloses a transformer which provides isolation between the input and output ports."  Pet. 14.  In Petitioner's Annotated Zhu Figure 3 (shown in Section III.A.4.b. above), Petitioner maps the transformer to windings 305, 306, and 307.  Patent Owner provides no counterargument.  We determine that Petitioner has made a sufficient showing for this limitation.

> ### e. 1.3.1 a transformer comprising (i) a primary winding arranged in circuit with the input port and the switch

Petitioner argues that Zhu discloses this limitation.  Pet. 15.  In Petitioner's Annotated Zhu Figure 3 (shown in Section III.A.4.b. above), Petitioner maps the recited primary winding to winding 305.  Further, Petitioner quotes Zhu's disclosure that "[s]ystem 300 includes a primary winding 305 coupled in series to a power transistor 308."  *Id.* (quoting Ex. 1005 ¶ 41).  Patent Owner provides no counterargument.  We determine that Petitioner has made a sufficient showing for this limitation.

IPR2021-00067
Patent RE47,031 E

> f. *1.3.2 (ii) a secondary winding arranged in circuit with a first rectifier and the output port, wherein the transformer is configured to transfer power from the input port to supply voltage or current to a load connected to the output port*

Petitioner argues that Zhu discloses this limitation in describing winding 306, diode 313, and Vout.  Pet. 15.  Petitioner cites to Zhu's description of the "output of the power supply Vout is provided by secondary winding 106 and a rectifier circuit including diode 113 and capacitor 114." Ex. 1005 ¶ 35 (cited by Pet. 15).  Patent Owner provides no counterargument. We determine that Petitioner has made a sufficient showing for this limitation.

> g. *1.4. a demand pulse generator galvanically connected to the secondary winding and configured to generate demand pulses applied via the galvanic isolation circuitry to the switch to adjust a frequency of the commutation of the input power to supply a desired amount of voltage or current to the load*

Petitioner contends that Zhu discloses sending "demand pulses through . . . the secondary winding to the auxiliary primary winding of the power transformer to command turn on of the primary switch," and that "[t]urn off is controlled by the primary-side controller."  Pet. 15–17  (citing Ex. 1005, Figs. 1, 3, ¶¶ 35–36.  Petitioner quotes the following disclosure in Zhu:

> when the system output voltage is lower than a predetermined value, *electrical signals are applied to a secondary winding of the transformer. These electrical signals are communicated to a primary side controller through an auxiliary winding.* The primary side controller senses the electrical signals and turns on a power switch coupled in series with a primary winding for a time period.

IPR2021-00067
Patent RE47,031 E

*Id.* (quoting Ex. 1005 ¶ 7) (emphasis by Petitioner).  Patent Owner provides no counterargument.  We determine that Petitioner has made a sufficient showing for this limitation.

> ### h. 1.5. a capacitor and a second rectifier both galvanically connected to the secondary winding,

Petitioner argues that Zhu discloses that its secondary circuit is powered from Vout stored on output capacitor 314.  Pet. 17 (citing Ex. 1005, Fig. 3).  Petitioner argues that Mao teaches a bias winding with capacitor Cf and rectifier diode 56 that are galvanically connected to a secondary winding. *Id.* (citing Ex. 1006, Figs. 4A, 9).  Petitioner argues that, in the Zhu-Mao Combined SMPS, diode 56 is the second rectifier and Cf is the capacitor. Pet. 17.  Mr. Bohannon testifies that when the teachings of Mao are combined with the power converter of Zhu, Mao's bias circuit, rather than Zhu's output voltage, provides bias voltage to the demand pulse generator of Zhu.  Ex. 1003 ¶ 89.  Mr. Bohannon provides an annotated figure showing the bias circuit of Figure 9 of Mao providing bias voltage to the demand pulse generator of Zhu.  *Id.*  Patent Owner argues that Mao fails to disclose this limitation because Mao does not disclose a secondary-side bias circuit. Prelim. Resp. 20–32.  We are not persuaded by Patent Owner's argument for the reasons set forth in Section III.A.4.j below.  We determine that Petitioner has made a sufficient showing for this limitation.

> ### i. 1.6. the second rectifier is different from the first rectifier and is poled to charge the capacitor during forward pulses of the apparatus

Petitioner argues that in the Zhu-Mao combined SMPS, the second rectifier, diode 56 of Mao, would be different from the first rectifier, the flyback/output rectifier of Zhu, and is poled to charge the capacitor during

IPR2021-00067
Patent RE47,031 E

forward pulses of the power converter.  Pet. 18–19 (quoting Ex. 1006, 3:59–4:2 ("During this mode of operation, i.e., when power switch Q1 is ON to induce a forward voltage, diode 56 would be in a conductive state and diode 54 would be in a non-conductive state . . . .  [I]n operation, filter capacitor Cf is charged to and holds [the bias voltage Vbias] while delivering energy to the load connected to the bias circuit.")).  Patent Owner argues that Mao fails to disclose this limitation because Mao does not disclose a secondary-side bias circuit.  Prelim. Resp. 20–32.  We are not persuaded by Patent Owner's argument for the reasons set forth in Section III.A.4.j below.  We determine that Petitioner has made a sufficient showing for this limitation.

### j. 1.7. the demand pulse generator is powered by energy stored in the capacitor to generate the demand pulses.

Petitioner argues that in the Zhu-Mao combined SMPS, Zhu's demand pulse generator, control 320, "would be powered by the energy stored on the capacitor of the Mao bias circuit."  Pet. 19 (citing Ex. 1006, Figs. 4A, 9, 1:9–18).  Mr. Bohannon testifies that, when the teachings of Mao are combined with Zhu, Zhu's control 320 (the demand pulse generator) would be powered by the energy stored on the capacitor Cf of Mao's bias circuit 50v.  Ex. 1003 ¶ 96.  Mr. Bohannon testifies that an example of how capacitor Cf of bias circuit 50v could power Zhu's control 320 is shown in the Zhu Mao Combination Figure.  *Id.*  In that figure (shown in Section A.3. above), Vbias in Mao's Figure 9 is connected via wire to Vcc in Zhao's Figure 3.  *Id.* ¶ 89.

Patent Owner disputes that the combination of Zhu and Mao teaches "a capacitor and a second rectifier both galvanically connected to the secondary winding" where the second rectifier "is poled to charge the capacitor during forward pulses" and "the demand pulse generator is powered by energy stored in the capacitor to generate the demand pulses."  Prelim. Resp. 20–24.

IPR2021-00067
Patent RE47,031 E

Patent Owner argues that Petitioner combines the bias circuit of Figure 9 of Mao with Zhu, but Patent Owner argues that Mao does not describe how its Figure 9 operates. *Id.* According to Patent Owner, Petitioner relies on Mao's descriptions of bias circuits shown in other figures, but Petitioner never explains why the bias circuit of Figure 9 would operate analogously. *Id.* at 22. Patent Owner further argues that the bias circuit of Figure 9 is materially different from the bias circuits described in Figure 4A, 5A, 6A, 7A, and 8A, which are all grounded to the primary side of power converter 10, whereas the bias circuit of Figure 9 is not. *Id.* at 23. Patent Owner also argues that Petitioner suggested that Mao's description of its Figure 4C was actually a description of Figure 9. *Id.* at 24.

Patent Owner further argues that the bias circuit shown in Figure 9 of Mao is not a secondary side circuit. Prelim. Resp. 25–32. Patent Owner notes that the above limitation requires that the first rectifier be on the secondary side of the flyback converter. *Id.* at 26. Patent Owner argues that Mao's bias circuit $50^V$ in its Figure 9 is not part of the secondary side of Mao's flyback converter. Prelim. Resp. 29–31. Patent Owner argues that Figure 4A of Mao makes clear that its bias circuit is not part of the secondary side of its flyback converter because its bias circuit is not galvanically isolated from the primary side: it shares the same ground as the primary side.

IPR2021-00067
Patent RE47,031 E

*Id.* at 26–28.  Patent Owner provides the following annotated version of
Figure 4A ("Patent Owner's Annotated Mao Figure 4A"):



*FIG. 4A*

Prelim. Resp. 27.  In Patent Owner's Annotated Mao Figure 4A above, Patent
Owner indicates the parts of converter 10 that are shown on the left side of
transformer T constitutes Mao's primary side.  *Id.* at 27.  In this figure, Patent
Owner further indicates that the portions of converter 10 that are (i) on the
right side of transformer T and (ii) above bias circuit 50 constitute Mao's
secondary side.  *Id.*  In this figure, bias circuit 50 is indicated as not being
part of either Mao's first or secondary sides.  *Id.*  Patent Owner further argues
that the bias circuits in Figures 1, 5A, 6A, 7A, and 8A are also connected to
the grounds of the primary side of their converters, so they are also not part
of the secondary side of those converters.  *Id.* at 28–29.

Patent Owner further argues that the secondary side in the converter of
Figure 9 of Mao would not encompass its bias circuit.  Prelim. Resp. 29–32.

21

IPR2021-00067
Patent RE47,031 E

Patent Owner provides the following annotated version of Figure 9 ("Patent Owner's Annotated Mao Figure 9"):



Prelim. Resp. 30.  In Patent Owner's Annotated Mao Figure 9 above, Patent Owner indicates that only the portions of converter 10 that are (i) on the right side of transformer T and (ii) above the bias circuit 50 constitute Mao's secondary side.  *Id.*  Patent Owner argues that the output of the transformer is part of the secondary side.  *Id.*  Patent Owner further argues that Figure 9 of Mao shows no connection between Vbias and the portions of the circuit Patent Owner has identified as Mao's secondary side, which includes the output ports.  *Id.*  Further, Patent Owner argues that the bias circuit $50^V$ is in a voltage domain that is independent of both the primary and secondary voltage domains.  *Id.* at 31.

There are two disputed issues: (i) whether the lack of textual description for Mao Figure 9 renders Petitioner's showing insufficient and (ii) whether bias circuit $50^V$ in the Zhu-Mao Combined SMPS is on the secondary side of that SMPS.  At trial, the parties and their experts should

IPR2021-00067
Patent RE47,031 E

address these issues further.  On this preliminary record, however, we find Petitioner's showing sufficient.

Patent Owner correctly notes that Mao provides no textual description for Mao Figure 9 and that the Petition addresses this issue in a footnote on page 19 of the Petition, stating that the reference to Figure 4C in Mao is a typographical error and should refer to Figure 9.  Pet. 19; Prelim. Resp. 24; Ex. 1006.  However, on this record, Figure 9 of Mao sets forth circuitry that both an expert and a person of ordinary skill would appear to be able to interpret without accompanying text.  Ex. 1006, Fig. 9.  In particular, Figure 9 appears to use standard symbols for capacitors, diodes, inductors, windings, and Mao uses the same symbols in other figures that have accompanying text that identify what those symbols mean.  *Id.* at Figs 4A, 5A, 6A, 7A, 8B, 9.  Thus, on this preliminary record, we do not find that the lack of textual description in Mao of its Figure 9 renders Petitioner's showing insufficient for purposes of institution.  It would be useful, however, for the parties and their experts, to address further that lack of textual description during trial, and whether the reference to Figure 4C of Mao, which does not exist, should instead refer to Figure 9.

On the current record, only the Patent Owner has expressly addressed why bias circuit $50^{\text{V}}$ is or is not on the secondary side of the SMPS for the Zhu-Mao Combined SMPS.  Pet. 17–19; Prelim. Resp. 29–35.  Petitioner identifies bias circuit 50 as being on the secondary side of the Zhu-Mao Combined SMPS, and Mr. Bohannon testifies that it is on that secondary side, but neither Petitioner nor Mr. Bohannon have expressly addressed why it is on that secondary side.  Pet. 17–19; Ex. 1003 ¶¶ 87–96.

IPR2021-00067
Patent RE47,031 E

On this preliminary record, we are not persuaded by Patent Owner's arguments regarding the location of bias circuit $50^V$.  Patent Owner argues that, in Figure 4A of Mao, bias circuit 50's ground is connected to the ground of primary side of the flyback converter.  Prelim. Resp. 26–28.  Patent Owner asserts that, as a result, bias circuit 50 is not galvanically isolated from the primary side and thus is not secondary-side circuitry.  *Id.* at 28–29.  We are not persuaded by this argument for two reasons.  First, Patent Owner has cited no objective evidence that circuitry must be galvanically isolated from the primary side of a converter to be secondary-side circuitry.  *Id.* at 27–29.  Claim 1 recites "galvanic isolation circuitry configured to provide galvanic isolation between the input port and an output port."  Ex. 1001, 12:11–12.  That claim language at least suggests that a secondary side is not inherently galvanically isolated from its primary side because, if it were, the limitation would be meaningless.  Second, bias circuit $50^V$ in Mao Figure 9 is shown as not connected to the ground of the primary side of its converter.  Ex. 1006, Fig. 9.  Thus, even under Patent Owner's theory that only a circuit that is galvanically isolated from the primary side of a converter can be on the converter's secondary side, bias circuit $50^V$ could be part of the converter's secondary side.

On this preliminary record, we determine that bias circuit $50^V$ is on the secondary side of the converter in the Combined Zhu-Mao SMPS.  In that SMPS, bias circuit 50 is electrically connected to the circuitry that contains winding 306, circuitry that neither party disputes is part of Zhu's secondary side.  Pet. 17.  In particular, in that SMPS, Vbias is directly connected to Vcc.  *Id.*  Thus, for this Decision, we determine that bias circuit $50^V$ is secondary side circuitry in the Combined Zhu-Mao SMPS.  It would be useful,

24

IPR2021-00067
Patent RE47,031 E

however, for the parties and their experts to further address this issue during trial.

We determine that Petitioner has made a sufficient showing for limitations 1.5, 1.6, and 1.7.

### 5. Motivation to Combine and Reasonable Expectation of Success

Petitioner argues that an ordinarily skilled artisan would have made the Zhu–Mao Combined SMPS for four reasons: (i) to avoid undesirable voltage fluctuations in the power to Zhu's secondary controller ("voltage-fluctuation rationale"), (ii) to enable Zhu to be more easily applied to power supplies operating at low output voltages ("low-output-voltage rationale"), (iii) to enable Zhu to be more easily applied to power supplies operating in a constant current mode ("constant-current-mode rationale"), and (iv) to allow Zhu to be more easily applied to additional power supply topologies ("additional-topologies rationale"). Pet. 12–13. In this section, we first address Petitioner's low-output-voltage rationale; then, we address Petitioner's other rationales. Finally, we address the parties' arguments regarding whether an ordinarily skilled artisan would have had a reasonable expectation of success in making the proposed combination.

### a. Low Output Voltages

Petitioner argues that an ordinarily skilled artisan would have "understood that the Zhu bias circuit would be unable to accommodate very low output voltages." Pet. 12 (citing Ex. 1003 ¶ 56, Ex. 1008, 3). Citing the TSM101 Application Note (Ex. 1008), Petitioner argues that the inability of a circuit, like Zhu's, to accommodate very low output voltages was well understood in the art. *Id.* Petitioner asserts that, as a result of this understanding, an ordinarily skilled artisan "would have been motivated to

IPR2021-00067
Patent RE47,031 E

improve the Zhu bias circuit using the teachings of Mao to . . . improve the
operation of the specific Zhu circuit." *Id.*

Patent Owner argues that, in presenting this rationale, Petitioner
focuses on what an ordinarily skilled artisan could have done, rather than
would have done. Prelim. Resp. 32–33. Patent Owner further argues that
Petitioner has not shown that Zhu could not accommodate low voltages
without modification. *Id.* at 46–47. In addition, Patent Owner asserts that
the TSM101 Application Note describes the operation of a particular
integrated circuit, TSM101, with classical SMPS and that Petitioner has not
shown that the limitations of the TSM101 controller used with classical
SMPS apply to Zhu. *Id.* at 47. Further, Patent Owner argues that an
ordinarily skilled artisan could make other modifications to accommodate
low voltages, and that the TSM101 controller would not function with Zhu.
*Id.* at 47–48. Patent Owner also argues that Zhu does not have a bias circuit.
*Id.* at 47.

We determine that, for this rationale, Petitioner has presented evidence
of what an ordinarily skilled artisan would have done, rather than merely
could have done. The rationale of accommodating low output voltages
concerns what an ordinarily skilled artisan would have been motivated to do,
not merely what that artisan could do.

We also determine that, for purposes of institution, Petitioner has set
forth a sufficient showing that an ordinarily skilled artisan would have
combined the teachings of Zhu and Mao to accommodate very low output
voltages.[6] As indicated, Petitioner contends that a person of ordinary skill in

---

[6] At trial, the parties may want to address what the referenced very low
output voltages or low output voltages are.

IPR2021-00067
Patent RE47,031 E

the art would have understood that the power converter of Zhu would be unable to accommodate very low output voltages when the output voltage drops to a level that was insufficient to reliably power the secondary control circuit. Pet. 12 (citing Ex. 1008, 3; Ex. 1003 ¶ 56). As further indicated, Petitioner contends that an ordinarily skilled artisan would have been motivated to improve the operation of Zhu by including the bias circuit of Mao in the output stage of Zhu for the benefit of operating Zhu's secondary circuit at lower output voltages as taught by TSM101. Pet. 12–13 (citing Ex. 1008; Ex. 1003 ¶¶ 57–58).

This rationale is supported by the testimony of Mr. Bohannon, who testifies that an ordinarily skilled artisan would have recognized that the circuit shown in Figure 3 of Zhu could not accommodate low output voltages and that an ordinarily skilled artisan would have been motivated to overcome this problem by providing an additional bias winding to Zhu or including the bias circuit of Mao Figure 9 (which has an auxiliary secondary winding Tb1) in the output stage to Zhu. Ex. 1003 ¶¶ 56–58; *see id.* ¶ 55 (TSM101 "points out the forward-bias circuit as having advantages over using the output voltage itself to power the secondary controller.").

Mr. Sandler does provide contrary testimony. Mr. Sandler testifies that the TSM101 Application Note describes how the TSM101 controller functions when used in a SMPS with a linear optocoupler for feedback. Ex. 2001 ¶ 56. Mr. Sandler further testifies that Zhu does not use a TSM101 controller. *Id.* ¶ 57. Further, Mr. Sandler testifies that more efficient alternatives could be pursued to accommodate low voltages. *Id.* Mr. Sandler also testifies that Zhu does not use a linear optocoupler for feedback. *Id.* ¶ 58. According to Mr. Sandler, therefore, the TSM101 controller would not

IPR2021-00067
Patent RE47,031 E

be used with Zhu and the limitations applicable to that controller are not applicable to Zhu. *Id.* ¶¶ 64, 65.

Zhu and the TSM101 Application Note support Mr. Bohannon's testimony. Zhu is directed to "switching mode power supplies (SMPS)." Ex. 1005 ¶ 3. The TSM101 Application Note is also directed to SMPS. Ex. 1008, 1. In Figure 3 of Zhu, control 320 is supplied with the output voltage of the SMPS. In Figure 3 of the TSM101 Application Note, integrated circuit TSM101 also is powered by the output voltage of its SMPS. *Id.* at 3 (ground of the SMPS is connected to pin 4 (GND) of the TSM101 voltage controller, the non-grounded output signal of the circuit is connected to pin 8 (VCC) of the TSM 101 voltage controller). The Application Note teaches, however, that a problem with the SMPS of its Figure 3 is that "[i]n applications requiring low voltage battery charge . . . the output voltage can be too low to supply correctly the TSM101." *Id.* at 3. The Application Note further discloses that "a solution to provide a quasi constant supply voltage to the TSM101" is to add an auxiliary winding to the secondary side of the transformer. *Id.* The bias circuit of Figure 9 of Mao has an auxiliary winding Tb1 on the secondary side of Mao's transformer. Ex. 1006, Fig. 9. Thus, these teachings of TSM101 support Mr. Bohannon's testimony that an ordinarily skilled artisan would been motivated to add the bias circuit of Mao to the SMPS of Figure 3 of Zhu.

Regarding Mr. Sandler's testimony that Zhu could not be used with the TSM101 controller, the mere fact that the TSM101 controller may not be physically combinable with Zhu's SMPS does not undermine a showing of obviousness. *See Facebook, Inc. v. Windy City Innovations*, 973 F.3d 1321, 1343 (Fed. Cir. 2020) ("The test for obviousness is not whether the features

IPR2021-00067
Patent RE47,031 E

of a secondary reference may be bodily incorporated into the structure of the primary reference.") (quoting *In re Keller*, 642 f.2d 413, 425 (CCPA 1981)); *Keller* 642 F.2d at 425 ("Rather, the test is what the combined teachings of the references would have suggested to those of ordinary skill in the art."). Further, Petitioner does not propose incorporating the optocoupler feedback mechanism of TSM101 into the structure of Zhu.  Rather, Petitioner's combination incorporates the bias circuit of Mao into the power converter of Zhu, and relies on the teachings of TSM101 to provide a reason for doing so.

Given the similarities between the circuits shown in Figure 3 of the TSM101 Application Note and Figure 3 of Zhu, on this preliminary record, we find that the TSM101 Application Note supports Mr. Bohannon's testimony and Petitioner's rationale for combining Zhu and Mao.  On this record, we are sufficiently persuaded that a person of ordinary skill in the art at the time of invention would have powered the secondary circuit of Zhu using the bias voltage of Mao instead of the output voltage of Zhu to yield the predictable benefit of powering Zhu's secondary circuit at lower output voltages as taught by TSM101.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 416 (2007).  The applicability of the teachings of the TSM101 Application Note to the combination of Zhu and Mao, however, should be explored further during trial.

Mr. Sandler testifies that adding a bias circuit to Figure 3 of Zhu would have been less efficient than choosing the prior art circuit shown in Figure 1 of Zhu (labeled "prior art").  Ex. 2001 ¶ 57.  The Supreme Court has held that "a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill."  *KSR Int'l* at 421.

IPR2021-00067
Patent RE47,031 E

On this record, we are not persuaded that one known option would have been more or less efficient than another known option. In particular, on this record, we are not persuaded that the prior art circuit shown in Figure 1 of Zhu, which has disadvantages as discussed in Zhu, would have been more advantageous than the invention shown in Figure 3 of Zhu. *See* Ex. 1005 ¶¶ 4, 5, 32–38. Rather, we are persuaded that modifying Zhu to accommodate very low voltages using the bias circuit of Mao was a known option within the technical grasp of a person of ordinary skill, leading to the anticipated success of powering Zhu's secondary circuit at lower output voltages. The efficiency of Petitioner's proposed modification compared to the prior art circuit shown in Figure 1 of Zhu, however, should be explored further during trial.

Regarding Zhu's purported bias circuit, Petitioner has not identified such a circuit in Zhu. Pet. 9–19. This leaves Petitioner's statements about Zhu's bias circuit unsupported. *Id.* at 12. For purposes of this Decision, however, we do not find Petitioner's lack of support for a bias circuit in Zhu to be fatal for its showing. Petitioner provides a showing of how Zhu and Mao can be combined that is not dependent on Zhu having a bias circuit. *Id.* at 17 (showing the Zhu-Mao Combination Figure, in which the secondary circuit of Zhu is powered by the bias voltage of Mao instead of the output voltage of Zhu). The parties, however, should explore this issue further during trial, and, during the trial, Petitioner should identify the circuit in Zhu that it contends is a bias circuit.

In sum, we determine that Petitioner presented sufficient evidence for its low-output-voltage rationale to combine the teachings of Zhu and Mao.

IPR2021-00067
Patent RE47,031 E

### b. Petitioner's Other Rationales

In this section, we address Petitioner's three additional rationales for combining Zhu and Mao's teachings: (a) the voltage-fluctuation rationale, (b) the constant-current-mode rationale, and (c) the additional-topologies rationale. Pet. 12–13. Although, for this Decision, we do not need to determine the sufficiency of these rationales in light of our determination regarding Petitioner's low-output-voltage rationale, we nevertheless briefly address these additional rationales here.

### i. Voltage Fluctuations

Petitioner argues that Mao expressly teaches that a bias circuit, such as shown in Zhu, used to power its secondary controller can be vulnerable to undesirable fluctuations. Pet. 12 (citing Ex. 1006, 1:50–55). Petitioner argues that this vulnerability would have motivated an ordinarily skilled artisan to make the Zhu-Mao Combined SMPS. *Id.* at 13.

Patent Owner argues that Zhu does not have a bias circuit. Prelim. Resp. 41–46. Further, Patent Owner asserts that Petitioner has not shown that the undesirable voltage fluctuations that Mao is concerned with would be present in Zhu. *Id.* at 37–41. Patent Owner asserts that Mao is directed towards stabilizing an unregulated bias, whereas the control circuit in Zhu is powered by a regulated voltage. *Id.* Patent Owner argues that, as such, there is no need to add Mao's bias circuit to Zhu to avoid undesirable voltage fluctuations in Zhu. *Id.*

As mentioned, in light of our determination regarding Petitioner's low-output-voltage rationale, for this Decision, we do not need to determine whether Petitioner has sufficiently supported its voltage-fluctuation rationale. Additional briefing on the disputed issues concerning this rationale, however,

IPR2021-00067
Patent RE47,031 E

could be beneficial (e.g., are voltage fluctuations an issue with Zhu's regulated voltage?[7]).

### ii. Constant Current Mode

Petitioner argues the Zhu bias circuit, if used in a constant current mode, would cause the output voltage to drop to a level that was insufficient to reliably power Zhu's secondary circuits.  Pet. 12.  Citing the TSM101 Application Note, Petitioner asserts that this issue was well known.  *Id.* (citing Ex. 1008, 3).  Therefore, Petitioner argues that an ordinarily skilled artisan would have been motivated to combine Mao's teachings with Zhu to allow Zhu to be used in power supplies with a constant output current mode. *Id.*

Patent Owner argues that Zhu was designed to operate in a constant voltage mode, not a constant current mode.  Prelim. Resp. 49.  Patent Owner further argues that Petitioner has not shown that the concerns expressed in the TSM101 Application Note are applicable to Zhu's circuit.  *Id.* at 49–52.

As mentioned, in light of our determination regarding Petitioner's low-output-voltage rationale, for this Decision, we do not need to determine whether Petitioner has sufficiently supported its constant-current-mode rationale.  Additional briefing on the disputed issues regarding this rationale could be beneficial (e.g., would Zhu's circuit be used in a constant current mode?).

---

[7] The questions posed in this Decision do not constitute implicit rulings on the timeliness of any argument or evidence presented at trial.

IPR2021-00067
Patent RE47,031 E

*iii. Additional Topologies*

Petitioner argues that an ordinarily skilled artisan would have been motivated to combine Mao's teachings with Zhu to allow Zhu to be more easily applied to additional power supply topologies. Pet. 12. Patent Owner argues that, to the extent this argument by Petitioner refers to anything other than accommodating low voltages or operating in a constant current mode, Petitioner has not provided any support for this rationale. Prelim. Resp. 52–53.

As mentioned, in light of our determination regarding Petitioner's low-output-voltage rationale, for this Decision, we do not need to determine whether Petitioner has sufficiently supported its additional-topologies rationale. Additional briefing on the disputed issues concerning this rationale, however, could be beneficial (e.g., what are the referenced additional topologies?).

*c. Reasonable Expectation of Success*

Petitioner argues that "[i]t would have been within the skill of a POSITA (person of ordinary skill in the art) to modify Zhu to add the improved bias circuit of Mao, either by providing an additional bias winding or by including the Mao circuit in the output stage itself." Pet. 13. As mentioned, Petitioner provides the Zhu-Mao Combination Figure (shown in Section III.A.3. above) as an example of how an ordinarily skilled artisan would add Mao's bias circuit to Zhu's SMPS. Pet. 17.

Patent Owner disagrees, arguing that Petitioner's Zhu–Mao Combination Figure has a floating terminal that would render the combined circuit inoperable. Prelim. Resp. 52–57. Patent Owner also argues that

IPR2021-00067
Patent RE47,031 E

Petitioner does not explain what it means to provide an additional bias winding or where such a winding would be situated. *Id.* at 32.

On the current record, we determine that Petitioner has demonstrated a reasonable expectation of success for its proposed combination. The terminal that Patent Owner indicates is floating is shown as an output that is directly under Vbias in the Zhu-Mao Combination Figure. Prelim. Resp. 54. In this combined figure, Vbias is being used to power the control 320, which is connected to ground. *Id.* For that reason, it would appear that an ordinarily skilled artisan would have recognized that the terminal identified as floating should be connected to ground. An ordinarily skilled artisan may have also believed that it was a mistake not to identify the terminal as grounded. This issue, however, should be explored further during trial.[8]

Further, Petitioner does not appear to explain what it means by adding an additional bias winding to Zhu or where that winding in Zhu should be placed. Pet. 12–13. Thus, Petitioner's arguments regarding adding an additional bias winding to Zhu appear undeveloped. *Id.* For purposes of this Decision, this is not fatal to Petitioner's showing, however, because Petitioner provides an alternative combination of Zhu and Mao's teaching— the Zhu-Mao Combined SMPS addressed above, for which Petitioner identifies how the references' teachings would be combined. Pet. 12–13, 17.

For purposes of this Decision, we determine that Petitioner has made a sufficient showing regarding a motivation to combine and a reasonable expectation of success.

---

[8] The parties may also want to address what the line connecting Vout to control 320 in the Zhu Mao Combined Figure represents. Pet. 17.

IPR2021-00067
Patent RE47,031 E

### 6. Summary for Claim 1

Petitioner has demonstrated a reasonable likelihood of establishing that Zhu and Mao would have rendered claim 1 obvious.

### 7. Claims 10 and 18

Claim 10 recites limitations similar to those recited in claim 1, phrased slightly differently.  For example, claim 1 recites an apparatus "configured to provide switched-mode power conversion" comprising "galvanic isolation circuitry [that] comprises a transformer comprising" a primary winding and a secondary winding.  Claim 10 recites an apparatus "configured to provide galvanically isolated switched-mode power conversion" comprising "a transformer comprising" a primary winding and a secondary winding.  Claim 18 recites a method of regulation performed in "an isolated switched-mode power converter having an input port and an output port."

For claims 10 and 18, Petitioner relies on its showing for claim 1, and Patent Owner presents the same arguments as for claim 1.  Pet. 23–29, 31–34; Prelim. Resp. 20–57.  We determine that Petitioner has demonstrated a reasonable likelihood of establishing that Zhu and Mao would have rendered claims 10 and 18 obvious.

### 8. Claims 2, 8, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, and 58–61

Petitioner sets forth how it contends the combination of Zhu and Mao teaches or suggests the limitations of claims 2, 8, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, and 58–61.  Pet. 19–35.  Each of these claims depends directly or indirectly from one of independent claims 1, 10, and 18.  Patent Owner argues that Petitioner's showing is inadequate for these claims for the same reasons as for claim 1.  Prelim. Resp. 57–58.  After reviewing the record, we determine that Petitioner has demonstrated a reasonable likelihood

IPR2021-00067
Patent RE47,031 E

of establishing that Zhu and Mao would have rendered claims 2, 8, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, and 58–61 obvious.

     *B. Ground 2: Asserted Obviousness over Szepesi and Mao*

     Petitioner asserts that claims 1, 2, 8, 10, 18, 25, 30–33, 37, 38, 43–46, 49, 52–54, and 58–61 would have been obvious over Zhu and Mao.  Pet. 2, 35–56.  The disputed issues for Ground 2 are the same as for Ground 1. Prelim. Resp. 19–58.  After reviewing the record, we determine that Petitioner has demonstrated a reasonable likelihood of prevailing on Ground 2.

## IV.   DISCRETION UNDER 35 U.S.C. § 314 REGARDING THE FILING OF THREE PETITIONS CHALLENGING THE SAME PATENT

     Petitioner filed four petitions challenging the patentability of the claims of the '031 patent.  The first petition challenges claims 1, 2, 8, 10, 18, 25, 27, 30–33, 37, 38, 40, 43–46, 49, 52–55, 58–61 in this proceeding.  The second petition challenges claims 5, 6, 11, 12, 19–24, 26, 29, 36, 39, 42, 50, 51, and 57 in IPR2021-00068 ("'068 IPR").  The third petition challenges claim 64 in IPR2021-00069 ("'069 IPR").  The fourth petition challenges claims 28, 34, 35, 41, 47, 48, 56, 62, and 63 in IPR2021-00070 ("'70 IPR"). Pursuant to the Board's Consolidated Trial Practice Guide, Petitioner filed a *Notice Ranking and Explaining Material Differences Between Petitions for Inter Partes Review* of U.S. Patent No. RE47,031.  Paper 1 ("Notice"); PTAB Consolidated Trial Practice Guide, 59–60 (Nov. 2019) (available at https://www.uspto.gov/TrialPracticeGuideConsolidated).  In its Notice, Petitioner requests that we institute in all four IPRs, but should we deny any of the Petitions, that we institute at least this and the '069 Petitions.  Paper 1, 1.  Patent Owner responded, requesting that we deny the petitions filed in the '068, '069, and '070 IPRs.  Paper 12, 1–5.

IPR2021-00067
Patent RE47,031 E

Because Petitioner ranked this Petition first and Patent Owner does not object, we decline to exercise our discretion to deny institution under 35 U.S.C. § 314(a) in this proceeding based on the filing of three additional petitions challenging the same patent.  In separate decisions, we address the petitions in the '068, '069, and '070 IPRs.

## V.   DISCRETION UNDER 35 U.S.C. § 325(D)

### A. Advanced Bionics

Patent Owner asserts that we should exercise our discretion to deny institution of the *inter partes* review under 35 U.S.C. § 325(d).  Prelim. Resp. 13–19; Prelim. Sur-reply 1–5.  For the reasons that follow, we decline to deny institution on that basis.

In evaluating arguments under § 325(d), we use:

> [a] two-part framework: (1) whether the same or substantially the same art previously was presented to the Office or whether the same or substantially the same arguments previously were presented to the Office; and (2) if either condition of [the] first part of the framework is satisfied, whether the petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims.

*Advanced Bionics, LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019-01469, Paper 6 at 8 (PTAB Feb. 13, 2020) (precedential); *see also Becton, Dickinson & Co. v. B. Braun Melsungen AG*, IPR2017-01586, Paper 8 at 17–18 (PTAB Dec. 15, 2017) (precedential as to Section III.C.5, first paragraph) (listing factors to consider in evaluating the applicability of § 325(d)) ("Becton, Dickinson").

Under *Advanced Bionics*, we consider factors (a), (b), and (d) of *Becton, Dickinson* in the evaluation of whether the same or substantially the

37

IPR2021-00067
Patent RE47,031 E

same art or arguments were previously presented to the Office.  *Advanced Bionics*, Paper 6 at 10.  *Becton, Dickinson* identifies these factors as:

> (a) the similarities and material differences between the asserted art and the prior art involved during examination;

> (b) the cumulative nature of the asserted art and the prior art evaluated during examination; and

> (d) the extent of the overlap between the arguments made during examination and the manner in which petitioner relies on the prior art.

*Becton, Dickinson*, Paper 8 at 17–18.  If the first part of the *Advanced Bionics* framework is satisfied, we turn to the second part, where we consider *Becton, Dickinson* factors (c), (e), and (f) in the evaluation of whether a petitioner has demonstrated that the Office erred in a manner material to the patentability of challenged claims.  *Becton, Dickinson* identifies these factors as:

> (c) the extent to which the asserted art was evaluated during examination, including whether the prior art was the basis for rejection;

> (e) whether petitioner has pointed out sufficiently how the examiner erred in its evaluation of the asserted prior art; and

> (f) the extent to which additional evidence and facts presented in the petition warrant reconsideration of the prior art or arguments.

*Becton, Dickinson*, Paper 8 at 17–18.

> *B. Advanced Bionics Framework, First Part*

As mentioned, the three grounds asserted by Petitioner involve the following three references: Zhu, Szpesi, and Mao.  Pet. 2.  Zhu and Szpesi were previously cited to the Office.  Ex. 1001, code (56).  Mao was not.  *Id.* Further, as set forth above, Mao is a reference for each asserted ground.  Pet. 2.  For the first part of the *Advanced Bionics* framework (and factors (a), (b),

IPR2021-00067
Patent RE47,031 E

and (d) of *Becton, Dickinson*), the parties dispute whether Mao is cumulative of references that were previously cited to the office.  Prelim. Resp. 17–19; Prelim. Reply 1–3.  Patent Owner argues that Mao is cumulative of Usui, a reference that were considered by the Office, and that Usui discloses the same pertinent features as Mao.  Prelim. Resp. 17–19.

Petitioner disagrees, arguing that Mao is not cumulative of Usui, because Mao teaches a bias circuit that (i) has a forward biased rectifier and (ii) is designed to be used with a secondary controller in an isolated power supply, whereas Usui does not.  Prelim. Reply 1–2.  Petitioner argues that the Examiner's reasons for allowance indicate that Usui does not teach this feature.  *Id.* at 2.  Petitioner further asserts that Usui is not directed to a circuit for generating a bias supply voltage for a secondary-side control circuit.  *Id.* at 3.  Petitioner contends that instead Usui "relates to a resonant circuit with the purpose of maintaining optimum regulation over variations in the input voltage in a DC to DC power converter."  *Id.* at 3 (citing Ex. 2009, code (54), 2:55–61, 4:25–36).

Patent Owner responds, reiterating its contention that Mao is cumulative to Usui.  Prelim. Sur-reply 1–4.  Patent Owner argues that Petitioner does not rely on Mao for the features that purportedly distinguish Mao from Usui.  Prelim. Sur-reply 1–2.  Patent Owner further asserts that Petitioner relies on Mao for "how [Mao's] bias voltage was generated and how Mao's bias circuits purportedly met limitations of specifically claimed circuitry in the '031 patent."  *Id.*  Patent Owner provides, as an example, Petitioner's reliance on Mao for the recited capacitor and rectifier.  *Id.*  Patent Owner asserts that Usui also discloses these features.  *Id.*  Patent Owner further argues that, although Petitioner asserts that Mao diode 56 is poled to

IPR2021-00067
Patent RE47,031 E

charge the capacitor during forward pulses of the power converter, Usui has analogous teachings. *Id.* at 2–3. Patent Owner further contends that the Examiner's reasons of allowance do not indicate that Mao is materially different from Usui. *Id.* Patent Owner further asserts that Mao's bias circuit is not on the secondary side of its power converter and is not used to supply a voltage to any secondary-side circuit. *Id.* at 3.

We agree with Petitioner that Mao is materially different from, and noncumulative to, Usui. In particular, Mao teaches or suggests a circuit for generating a bias voltage for a secondary-side control circuit. Ex. 1006, 1:9–18. For example, Mao discloses circuitry for generating a bias voltage for use in the secondary stage of a flyback converter (and other converters). *Id.* at 1:9–16. Mao further discloses that this bias voltage may be used to power the control circuitry of the converter. *Id.* at 1:16–18. Patent Owner does not dispute that Usui does not teach a circuit for generating a bias voltage for a secondary-side control circuit. Prelim. Reply 3; Prelim. Sur-reply 3. Patent Owner also does not argue that Usui suggests such a circuit. Instead, Patent Owner argues that Mao's bias circuit is not on the secondary side of its power converter and is not used to supply a voltage to any secondary-side control circuit. Prelim. Sur-reply 3. We disagree. As set forth in Section III.A.4.l., on this preliminary record, we find that the bias circuit in Mao Figure 9 is on the secondary side of its power converter. Further, as discussed immediately above, Mao teaches or suggests a circuit for generating a bias voltage for a secondary-side control circuit. *Id.* at 1:9–18.

This difference between Mao and the Usui reference is material. Claims 1, 10, and 18 recite a diode and capacitor galvanically connected to the secondary winding. Ex. 1001, 12:27–28, 13:29–30; 14:29–33. In each of

IPR2021-00067
Patent RE47,031 E

Petitioner's proposed combinations of Mao with the primary references, Mao provides bias voltage to a controller in the secondary stage of the converter. Pet. 18, 24, 34. And Petitioner provides a reason (supported by evidence) why Mao's circuitry for providing a bias voltage would advantageously power secondary side control circuitry (e.g., to accommodate low output voltages). *Id.* at 12–13. Neither party has asserted that Usui teaches or suggest providing a bias voltage to secondary control circuitry. Thus, Mao's teaching of generating a bias voltage for a secondary-side control circuit of a flyback converter constitutes a material difference between Mao and the Usui reference.

Regarding the potential overlap between arguments made in this proceeding versus made previously to the Office, neither party has asserted that the Office previously considered any argument that accommodating low output voltages would have motivated an ordinarily skilled artisan to reach the claimed invention.

In sum, we determine that the asserted prior art and arguments are not substantially the same as those previously presented to the Office.

### C. Advanced Bionics Framework, Second Part and Conclusion Regarding Discretion Under § 325(d)

Because the first part of the *Advanced Bionics* test is not satisfied, we need not proceed to the second part of the framework. *See Advanced Bionics* at 8 (second step of the framework only applies "if either condition of the first part of the framework is satisfied").

In sum, we decline to exercise our discretion under 35 U.S.C. § 325(d) to deny institution of *inter partes* review.

IPR2021-00067
Patent RE47,031 E

## VI.   CONCLUSION

We are persuaded that Petitioner has demonstrated a reasonable likelihood of proving the unpatentability of at least one challenged claim of the '031 patent.  We clarify, however, that our analysis is based only on the record as it stands now and that we have not made a final determination with respect to the patentability of any challenged claim.[9]  At trial, the parties should support any arguments they wish to make and should not rely on any preliminary findings or analysis in this Decision.

## VII.   ORDER

It is:

ORDERED that, pursuant to 35 U.S.C. § 314(a) an *inter partes* review of the '031 patent is hereby instituted on the asserted grounds set forth in the Petition; and

FURTHER ORDERED, that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is given of the institution of a trial, which commences on the entry date of this Decision.

---

[9] The Preliminary Response, the Preliminary Reply, and the Preliminary Sur-reply are not part of the trial record.  If either party wishes to have an argument that it made in any of those papers considered for the Final Written Decision, that party must present that argument in the appropriate trial paper (e.g., Patent Owner Response, Petitioner's Reply).

IPR2021-00067
Patent RE47,031 E

FOR PETITIONER:

Jennifer Huang
Kim Leung
FISH & RICHARDSON, P.C.
jjh@fr.com
leung@fr.com

FOR PATENT OWNER:

Jonathan Lindsay
CROWELL & MORRELL LLP
jlindsay@crowell.com

Hong Zhong
IRELL AND MANELLA LLP
hzhong@irell.com